Klarice Benn, OSB 033585
kbnenn@abbott-law.com
ABBOTT LAW GROUP, P.C.
215 SW Washington Street, Suite 300
Portland, OR 97204
Telephone: (503) 595-9510
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIONAL SURETY CORPORATION, an Illinois Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>TIG INSURANCE COMPANY, f/k/a TRANSAMERICA INSURANCE COMPANY, a California Corporation,<br><br>*Defendant*. | Case No. 3:21-cv-266<br><br>COMPLAINT<br>ORS §§ 465.480(4) Contribution and 28 U.S.C. § 2201 and ORS § 28.010 Declaratory Judgment<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff National Surety Corporation ("NSC") hereby files this Complaint for inter-insurer contribution pursuant to ORS § 465.480(4) and for declaratory judgment pursuant to U.S.C. § 2201 and ORS § 28.010 against Defendant TIG Insurance Company and, for its Complaint, avers as follows:

**PARTIES**

1.

NSC is an Illinois Corporation with its principal place of business in Illinois.

/ / /

/ / /

/ / /

Complaint                                                                 1

2.

Defendant TIG Insurance Company, which was formerly known as Transamerica Insurance Company ("Defendant"), is a California Corporation with its principal place of business in New Hampshire.

## JURISDICTION AND VENUE

3.

The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), and complete diversity of citizenship exists. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.

4.

Venue is proper pursuant to 28 U.S.C. § 1391(a) through (d).

## NATURE OF THE ACTION AND UNDERLYING CLAIM

5.

This is an inter-insurer action for statutory contribution to past and future environmental defense and indemnity costs and for declaratory judgment concerning the proper allocation of those costs between the parties. NSC seeks contribution to such costs that it has paid to or on behalf of the parties' insured, McKay Investments Company ("McKay"), exceeding NSC's allocable share of those costs, as well as contribution to such additional costs to be paid by NSC through the date of judgment in this action, plus pre- and post-judgment interest. NSC also seeks judgment declaring the parties' allocable shares of McKay's past and future defense and indemnity costs, as well as Defendant's pre- and post-judgment interest obligations to NSC.

/ / /

/ / /

6.

McKay owned Mohawk Shopping Center located at 1459 Mohawk Boulevard in Springfield, Oregon ("Site"), from the 1960s through 2008. During McKay's ownership, tenants conducted dry cleaning operations at the Site. In or around 2001, the Oregon Department of Environmental Quality ("DEQ") discovered soil and groundwater contamination which DEQ contends relates to historical dry cleaning operations at the Site. McKay entered into a voluntary agreement with DEQ to conduct an investigation relating to that contamination. McKay has incurred oversight and investigation costs prior to and during the course of DEQ's investigation and response actions relating to the Site.

7.

On November 25, 2009, DEQ sent a letter to McKay demanding payment of $964,847.33 in costs that DEQ had incurred as a result of investigating and remediating contamination relating to the Site. In that letter, DEQ also demanded that McKay complete a remedial investigation and feasibility study and perform all necessary removal and remedial actions relating to the Site (together with DEQ's aforementioned past-cost claim, the "DEQ Claims").

8.

On March 5, 2010, McKay tendered defense and indemnity of the DEQ Claims to NSC and to Defendant under the parties' insurance policies known to McKay at the time of its tender and under any additional, but then-unknown, insurance policies either party issued to McKay.

9.

In response to McKay's tender, NSC agreed subject to a reservation of its rights to defend the DEQ Claims under the following three primary insurance policies:

/ / /

- o MXP-5220124 – Policy Period 3/1/83-3/1/86 (cancelled 3/1/85);
- o MXX-80067137 – Policy Period 3/1/85-3/1/86; and
- o MXX-80120505 – Policy Period 3/1/86-4/1/87

These three policies are referred to herein collectively as the "NSC Primary Policies."

10.

In addition to the NSC Primary Policies, NSC issued the following umbrella and/or excess policies to McKay:

- o XLB-1560860 – Policy Period 3/1/83-3/1/84;
- o XLB-1569063 – Policy Period 3/1/84-3/1/85;
- o XLB-1723754 – Policy Period 3/1/85-3/1/86; and
- o XLB-1768059 – Policy Period 3/1/86-4/1/87

These four policies are referred to herein collectively as the "NSC Excess Policies." Although McKay tendered defense and indemnity of the DEQ Claims under the NSC Excess Policies as well, NSC declined the tenders subject to a reservation of rights as coverage under the NSC Excess Policies have not yet been triggered.

11.

In response to McKay's tender, Defendant agreed to defend the DEQ Claims against McKay under policy number 12101609 ("Initial TIG Policy"), which has a period of March 1, 1980, to March 1, 1981.

12.

After the parties agreed to fund McKay's defense of the DEQ Claims, they agreed to a *pro-rata*-by-time allocation of McKay's defense costs based upon the periods of the NSC Primary Policies and the Initial TIG Policy, which were the only McKay policies known to NSC

at the time. This allocation resulted in NSC agreeing to pay 80.33% of McKay's DEQ Claims costs and Defendant agreeing to pay the remaining 19.67% of those costs.

13.

In February 2013, Defendant notified NSC and McKay that Defendant had located four additional insurance policies that it issued to McKay and that provide an additional six years of coverage, as follows:

- o   Policy No. 6963636 – Policy Period 3/1/74-3/1/77;
- o   Policy No. 10718329 – Policy Period 3/1/77-3/1/78;
- o   Policy No. 11325806 – Policy Period 3/1/78-3/1/79; and
- o   Policy No. 11536289 – Policy Period 3/1/79-3/1/80

These four policies and the Initial TIG Policy are referred to herein collectively as the "TIG Policies."

14.

Following Defendant's acknowledgement of its additional six years of McKay policies, NSC proposed a revision to the parties' cost-share agreement to reflect each party's re-calculated *pro-rata*-by-time share of McKay's costs relating to the DEQ Claims, with each party's re-calculated share of those costs under NSC's proposal based upon the periods of the NSC Primary Policies and the TIG Policies. Defendant, however, refused to revise the parties' prior cost-share agreement and instead insisted on continuing to pay only 19.67% of McKay's defense costs relating to the DEQ Claims. Defendant continues to adhere to that position: it refuses to pay more than 19.67% of McKay's DEQ Claim costs and refuses to reimburse NSC for its past payments of McKay's DEQ Claims costs exceeding NSC's allocable share of those costs.

/ / /

15.

In addition to the TIG Policies, upon information and belief, Defendant issued two additional primary liability insurance policies to McKay from March 1, 1971, to March 1, 1974 and from March 1, 1981, to March 1, 1982 (hereinafter, the "Lost TIG Policies").  Evidence of some of the Lost TIG Policies was first discovered by the DEQ when it commissioned an insurance archaeology investigation on behalf of McKay in September of 2009.  The information discovered was included in McKay's tender to Defendant in 2010.  NSC then commissioned its own insurance archaeology investigation and review of historical McKay business records in 2015 and located additional evidence of the remaining Lost TIG Policies and provided that information to TIG.  Although Defendant received notice of the DEQ Claims relating to the Lost TIG Policies and received historical McKay business records evidencing Defendant's issuance of the Lost TIG Policies, Defendant contends that it cannot locate either of the Lost TIG Policies and that it did not issue them to McKay.

16.

Upon information and belief, Defendant issued the Lost TIG Policies to McKay, and the Lost TIG Policies each include duty-to-defend provisions obligating Defendant to defend the DEQ Claims.

17.

Defendant refuses to pay any of McKay's DEQ Claims costs under either of the Lost TIG Policies and, as with the TIG Policies other than the Initial TIG Policy, to factor either of the Lost TIG Policies into any re-allocation of McKay's past and future DEQ Claims costs as between the parties.

/ / /

18.

In December 2014, DEQ and McKay settled for $925,000 DEQ's prior demand for payment of DEQ Claims costs ("DEQ Settlement").

19.

In January 2015, McKay and the parties entered into an agreement to fund the DEQ Settlement and to resolve McKay's claim for past costs it incurred relating to the DEQ claims ("McKay Past Costs Settlement").

20.

In determining each party's share of the DEQ Settlement and the McKay Past Costs Settlement, Defendant continued to refuse to revisit its prior cost-share agreement with NSC, even while knowing that Defendant had discovered and acknowledged an additional six years of primary insurance coverage under the TIG Policies, and even while knowing that McKay had produced evidence of the two additional Lost TIG Policies. As a result of Defendant's recalcitrance, NSC reserved its right to seek reallocation of and contribution from Defendant to the amounts that NSC paid toward the DEQ Settlement and the McKay Past Costs Settlement.

21.

From September 2010 through January 31, 2021, NSC paid a total of $3,762.312.02 in defense and indemnity costs on behalf of McKay in response to the DEQ Claims, including NSC's payments relating to the DEQ Settlement and the McKay Past Costs Settlement (collectively, the "Past NSC Payments").

22.

In addition to the Past NSC Payments, NSC expects to continue to pay more than its allocable share of McKay's defense and indemnity costs relating to the DEQ Claims through the

date of judgment in this action, subject to a reservation of NSC's rights to recover from Defendant its allocable share of those costs.

## FIRST CLAIM FOR RELIEF

## STATUTORY CONTRIBUTION

## (ORS § 465.480(4))

23.

NSC repeats and realleges each and every averment in paragraphs 1 through 22 as if fully set forth herein.

24.

Through the Past NSC Payments, NSC paid approximately 80.33% of McKay's defense and indemnity costs relating to DEQ Claims through January 31, 2021. Absent a change in position by Defendant, NSC expects to continue to pay the same percentage of McKay's defense and indemnity costs relating to the DEQ Claims through the date of judgment in this action.

25.

Although Defendant agreed to participate in McKay's defense of the DEQ Claims, Defendant continues to insist on paying only 19.67% of McKay's costs relating to the DEQ Claims despite the fact that Defendants' policies, including the later-discovered TIG Policies and the two Lost TIG Policies, provide collectively twelve years of coverage as compared to NSC's four years of coverage. Defendant takes this position with respect to the Past NSC Payments and, upon information and belief, will continue to take this position with respect to NSC's payments of McKay's defense and indemnity payments relating to the DEQ Claims through the date of judgment in this action.

/ / /

26.

NSC is entitled to contribution to the Past NSC Payments from Defendant pursuant to ORS 465.480(4) in the amount of $2,585,714.17, which reflects an allocation between the parties of 74.6% Defendant and 25.4% NSC.

27.

In addition to that statutory contribution from Defendant to the Past NSC Payments, NSC is entitled to ORS 465.480(4) contribution from Defendant towards NSC's anticipated overpayment of McKay's DEQ Claims costs from February 1, 2021, through entry of judgment in this case ("NSC Subsequent Payments").

28.

NSC also requests prejudgment interest at 9% per annum pursuant to ORS § 82.010 on Defendant's ORS 465.480(4) obligation to contribute to the Past NSC Payments and to the NSC Subsequent Payments.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

## (28 U.S.C. § 2201 and ORS § 28.010)

29.

NSC repeats and realleges each and every averment in paragraphs 1 through 28 as if fully set forth herein.

30.

An actual and justiciable controversy exists between NSC and Defendant regarding (i) Defendant's duty to defend and indemnify the DEQ Claims against McKay under each of the TIG Policies and the Lost TIG Policies; (ii) each party's allocable share of McKay's past and

future defense and indemnity costs relating to the DEQ Claims; (iii) the amounts of contribution Defendant owes to NSC relating to the Past NSC Payments and to the NSC Subsequent Payments; (iv) each party's allocable share of McKay's future defense and indemnity costs relating to the DEQ Claims following entry of judgment in this action; and (v) Defendant's obligation to pay NSC ORS § 82.010 pre-judgment interest and the amount of Defendant's pre-judgment interest obligation to NSC.

31.

Declaratory judgment by this Court concerning the parties' respective rights, duties and obligations is necessary and proper to terminate the parties' disputes and controversies and so that the parties can assess and satisfy their respective rights, duties and obligations to McKay and to each other.

32.

Pursuant to Oregon's Uniform Declaratory Judgments Act, ORS § 28.010, *et seq* and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, NSC is entitled to a declaration that:

(i) Defendant has a duty to defend and indemnify McKay relating to the DEQ Claims under each of the TIG Policies and the Lost TIG Policies;

(ii) Defendant has not been paying its allocable share of McKay's defense and indemnity costs relating to the DEQ Claims based on all of the policies issued by both parties;

(iii) Defendant owes NSC $2,585,714.17 in contribution for the Past NSC Payments, plus Defendant's allocable share of NSC Subsequent Payments; and

(iv) Defendant owes NSC ORS § 82.010 prejudgment interest on Defendant's unpaid allocable shares of the Past NSC Payments and the NSC Subsequent Payments in amounts to be determined after trial.

## REQUEST FOR RELIEF

*WHEREFORE*, NSC respectfully requests that this Court:

(A) As to NSC's First Claim for Relief, order Defendant to pay to NSC, pursuant to ORS 465.480(4):

    (i) $2,585,714.17 for those amounts NSC overpaid as part of the Past NSC Payments;

    (ii) the amount of the NSC Subsequent Payments overpaid by NSC; and

    (iii) pre-judgment interest at 9% per annum on amounts (i) and (ii); and

    (iv) post-judgment interest in an amount to be determined on amounts (i) and (ii) until actually paid by Defendant to NSC.

(B) As to NSC's Second Claim for Relief, declare that:

    (i) Defendant has a duty to defend and indemnify McKay with respect to the DEQ Claims under each of the TIG Policies and the Lost TIG Policies;

    (ii) Defendant has not been paying its allocable share of McKay's defense and indemnity costs based on all of the parties' policies issued to McKay;

    (iii) the amounts for which Defendant is liable to contribute to the Past NSC Payments and the NSC Subsequent Payments;

    (iv) the amounts of ORS § 82.010 prejudgment interest owed by Defendant to NSC with respect to the Past NSC Payments and the NSC Subsequent Payments; and

    (vi) the amounts of Defendant's post-judgment interest obligations to NSC.

(C) Enter any further relief that the Court deems just and proper.

/ / /

## JURY DEMAND

NSC demands a jury trial on all claims and issues so triable.

Dated: February 18, 2021.

By:   /s/ Klarice Benn
Klarice Benn, OSB 033585
kbnenn@abbott-law.com
ABBOTT LAW GROUP, P.C.
215 SW Washington Street, Suite 300
Portland, OR 97204
Telephone: (503) 595-9510

*Counsel for Plaintiff National Surety Company*
