Tab Wood, OSB No. 115604
twood@sussmanshank.com
Thomas M. Christ, OSB No. 834064
tchrist@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| NATIONAL SURETY CORPORATION, an Illinoi Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TIG INSURANCE COMPANY, f/k/a TRANSAMERICA INSURANCE COMPANY, a California Corporation,<br><br>Defendant. | Case No. 3:21-cv-00266-HZ<br><br>TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS |

Defendant TIG Insurance Company, f/k/a Transamerica Insurance Company ("TIG") answers National Surety Corporation's ("Plaintiff's") complaint as follows:

1.

TIG admits the allegations in Paragraphs 1-4.

2.

Paragraph 5 is Plaintiff's summary of its cause of action, which requires no answer from TIG. To the extent Paragraph 5 is construed to require an answer from TIG, TIG admits that

**Pa**ge  1  –  TIG  INSURANCE  COMPANY'S  ANSWER,  AFFIRMATIVE  DEFENSES,  AND COUNTERCLAIM

Plaintiff's complaint speaks for itself in terms of its alleged theories of liability and damages. Except as expressly admitted, TIG denies the allegations of Paragraph 5, including that Plaintiff is entitled to the relief it seeks.

3.

As to Paragraph 6, TIG admits that McKay owned Mohawk Shopping Center located at 1459 Mohawk Boulevard in Springfield, Oregon ("Site"); that during McKay's ownership, tenants conducted dry cleaning operations at the Site; that at some point the Oregon Department of Environmental Quality ("DEQ") discovered soil and groundwater contamination that DEQ contends relates to the historical dry cleaning operations at the Site; that McKay entered into a voluntary agreement with DEQ to conduct an investigation relating to that contamination; and that McKay has incurred oversight and investigation costs prior to and during the course of DEQ's investigation and response. Except as expressly admitted, TIG denies the allegations of Paragraph 6.

4.

As to Paragraph 7, TIG admits that on November 25, 2009, DEQ sent a letter to McKay Investment Company, LLC and McKay Investment Co., and that such letter speaks for itself. Except as expressly admitted, TIG denies the allegations of Paragraph 7.

5.

As to Paragraph 8, TIG admits that on March 4, 2010, McKay Investment Company, through counsel, sent a letter to Plaintiff titled "Notice of New Claim/Notice of Lost Policy" that included a demand for defense and indemnity, although the letter speaks for itself. TIG also admits that McKay tendered defense and indemnity of the DEQ Claims to NSC, and on information and belief, that such tender occurred on or about March 5, 2010. Except as expressly admitted, TIG denies the allegations of Paragraph 8.

///

Page 2 –   TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

6.

TIG admits the allegations in Paragraph 9-10, which, for context here, generally provide that Plaintiff accepted McKay's tender of defense and indemnity, subject to a reservation of rights, to defend McKay under three primary insurance policies ("NSC Primary Policies") with policy periods effective from March 1, 1983 to April 1, 1987, but declined tender of defense and indemnity under four umbrella and/or excess polices ("NSC Excess Policies").

7.

As to Paragraph 11, TIG admits that in response to McKay's March 4, 2010 tender of defense and indemnity, TIG, by letter dated November 23, 2010, agreed to participate with McKay's other insurers in McKay's defense under policy number 12101609 ("Initial TIG Policy"), subject to a complete reservation of rights and defenses as explained in the November 23, 2010 letter, which speaks for itself. TIG further admits that the policy period for the Initial TIG Policy was from March 1, 1980 to March 1, 1981. Except as expressly admitted, TIG denies the allegations of Paragraph 11.

8.

As to Paragraph 12, TIG admits that after TIG's and Plaintiff's respective acceptances of defense, as described above, they agreed to a *pro rata* time-on-risk allocation of McKay's defense costs based on the policy periods of the NSC Primary Policies and the Initial TIG Policy. TIG further admits that such agreed-upon allocation was that Plaintiff would pay 80.33% of such costs, and TIG would pay 19.67% of such costs. Plaintiff and TIG discussed this agreement as early as January, 2011, and Plaintiff and TIG entered into this agreement no later than 2011. TIG hereinafter refers to this agreement as the "2011 Allocation Agreement." Except as expressly admitted, TIG denies the allegations of Paragraph 12.

///

///

**Pa**ge  3  –  TIG  INSURANCE  COMPANY'S  ANSWER,  AFFIRMATIVE  DEFENSES,  AND COUNTERCLAIM

9.

As to Paragraph 13, TIG admits that on February 5, 2013, TIG sent a letter to McKay, through counsel, and that letter speaks for itself. TIG further admits that through that letter, it notified McKay of the existence of four additional policies with effective dates as set forth in Paragraph 13, spanning generally from March 1, 1974 to March 1, 1980. TIG further admits that those policies, plus the Initial TIG Policy are referred to collectively as the "TIG Policies." Except as expressly admitted, TIG denies the allegations of Paragraph 13.

10.

As to Paragraph 14, TIG admits that following TIG's 2013 discovery of the policies referenced above in Paragraph 9 of this Answer, Plaintiff proposed to unwind and alter the 2011 Allocation Agreement to, in essence, reflect an increased *pro rata* time-on-risk allocation to TIG, and a decreased *pro rata* time-on-risk allocation to Plaintiff. TIG admits that it did not agree to Plaintiff's new proposal to unwind and alter the 2011 Allocation Agreement. Except as expressly admitted, TIG denies the allegations of Paragraph 14.

11.

As to Paragraphs 15-16, TIG admits that Plaintiff provided TIG certain documents and information Plaintiff believes evidence the existence of what Plaintiff describes as the "Lost TIG Policies." Except as expressly admitted, TIG denies the allegations in Paragraphs 15-16.

12.

As to Paragraph 17, TIG admits it has not issued any payments under either of the purported "Lost TIG Policies," as no one has ever found such policies, and their terms and applicability to the current dispute, if any, are unknown. TIG further admits that the parties did not include such "Lost TIG Policies," again, if they even exist, in the 2011 Allocation Agreement. Except as expressly admitted, TIG denies the allegations of Paragraph 17.

///

**Pa**ge  4 –   TIG  INSURANCE  COMPANY'S  ANSWER,  AFFIRMATIVE  DEFENSES,  AND COUNTERCLAIM

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

13.

As to Paragraph 18, TIG admits that in December, 2014, McKay Investment Company, LLC and the Oregon Department of Environmental Quality entered into an agreement titled "Past Cost Settlement Agreement, Wavier, Release and Covenant Not to Sue," that the agreement speaks for itself, and that a term of the agreement was that Fireman's Fund and TIG (defined in the Agreement as "Funding Insurers") were to pay $925,000 to the Oregon Department of Justice Client Trust Account to be used in part in full and final settlement of the DEQ Past Costs Claims. TIG further admits that Plaintiff refers to that settlement as the "DEQ Settlement" in Plaintiff's complaint. Except as expressly admitted, TIG denies the allegations of Paragraph 18.

14.

As to Paragraph 19, TIG admits that in January, 2015, TIG, Plaintiff and Fireman's Fund Insurance Company, and McKay Investment Company, LLC entered into an agreement titled "Past Costs Settlement Agreement and Release," and that the agreement speaks for itself. TIG further admits that Plaintiff refers to that settlement as the "McKay Past Costs Settlement" in Plaintiff's complaint. Except as expressly admitted, TIG denies the allegations of Paragraph 19.

15.

As to Paragraph 20, TIG admits that in determining each party's share of the DEQ Settlement and the McKay Past Costs Settlement, TIG did not agree to revisit, alter, or amend the 2011 Allocation Agreement. TIG further admits that Plaintiff continued to disagree with TIG's refusal to revisit, alter, or amend the 2011 Allocation Agreement, as it had dating back to 2013. Except as expressly admitted, TIG denies the allegations of Paragraph 20.

16.

As to Paragraph 21, TIG admits that Plaintiff has paid certain amounts in defense and indemnity costs on behalf of McKay with respect to the claims asserted by the DEQ, that such amounts included payments related to the DEQ Settlement and McKay Past Costs Settlement, and

**Pa**ge  5  –   TIG  INSURANCE  COMPANY'S  ANSWER,  AFFIRMATIVE  DEFENSES,  AND COUNTERCLAIM

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

that Plaintiff refers to those amounts paid as "Past NSC Payments" in Plaintiff's complaint. TIG further alleges that the amounts paid by Plaintiff have been consistent with the 2011 Allocation Agreement. Except as expressly admitted, TIG denies the allegations of Paragraph 21.

17.

TIG denies the allegations in Paragraph 22.

18.

As to Paragraph 23, TIG re-alleges and incorporates its answers to Paragraphs 1-22 of Plaintiff's complaint as if fully set forth herein.

19.

As to Paragraph 24, TIG admits that, consistent with the 2011 Allocation Agreement, Plaintiff has paid approximately 80.33% of McKay's defense and indemnity costs relating to the claims by the DEQ because that is the allocation agreed to by the parties. TIG further admits that the 2011 Allocation Agreement binds Plaintiff to continue paying such amount. Except as expressly admitted, TIG denies the allegations of Paragraph 24.

20.

As to Paragraph 25, TIG admits that it has complied with the 2011 Allocation Agreement. TIG further admits that to the extent Plaintiff is referring to the relevant factors of ORS 465.480(4), NSC is misstating the applicable factors under that statute, including that the statute not only focuses on years of coverage, but also policy limits, when determining allocation amounts. Except as expressly admitted, TIG denies the allegations of Paragraph 25.

21.

TIG denies the allegations set forth in Paragraphs 26-28.

22.

As to Paragraph 29, TIG re-alleges and incorporates its answers to Paragraphs 1-28 of Plaintiff's complaint as if fully set forth herein.

**Pa**ge 6 –   TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

23.

TIG denies the allegations set forth in Paragraphs 29-32.

AFFIRMATIVE DEFENSES

First Affirmative Defense

(Failure to State a Claim)

24.

Plaintiff has failed to state a claim upon which relief can be granted.

Second Affirmative Defense

(Statute of Limitations/Repose)

25.

Plaintiff's claims are barred in whole or in part by the applicable statute(s) of limitations or repose.

Third Affirmative Defense

(Laches)

26.

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

Fourth Affirmative Defenses

(Waiver)

27.

Plaintiff's claims are barred in whole or in part because Plaintiff, by its own acts and omissions, has waived its claims against TIG.

///

///

///

///

Page 7 –   TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Fifth Affirmative Defense

(Estoppel)

28.

Plaintiff is estopped through its acts and omissions from seeking or obtaining its requested relief, in whole or in part.

Sixth Affirmative Defense

(Consent/Acquiescence)

29.

Plaintiff's claims are barred in whole or in part by the doctrines or consent and/or acquiescence.

Seventh Affirmative Defense

(2011 Allocation Agreement)

30.

Plaintiff's claims are barred because there is an agreement, the 2011 Allocation Agreement, between TIG and Plaintiff, under which TIG has fully performed and continues to fully perform, that supersedes Plaintiff's claims and requested relief.

Eighth Affirmative Defense

(ORS 465.480(4)(a) – Settlement Agreement)

31.

Plaintiff's contribution clam under ORS 465.480(4) is barred in whole or in part because, pursuant to ORS 465.480(4)(a), TIG has entered into a good-faith settlement agreement with the insured, McKay regarding the alleged environmental claim.

///

///

///

Page 8 –  TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Ninth Affirmative Defense

(ORS 465.480(4)(d) – Preemption)

32.

Plaintiff's claims are preempted in whole or in part by operation of ORS 465.480(4)(d).

Tenth Affirmative Defense

(Standing)

33.

Plaintiff lacks standing to pursue all or part of its claims.

Eleventh Affirmative Defense

(Contractual Time Limitations and/or Conditions)

34.

Plaintiff's claims are barred in whole or in part by contractual conditions or terms setting forth time limitations applicable to plaintiff's claims.

Twelfth Affirmative Defense

(ORS 465.480(5))

35.

To the extent ORS 465.480 is found to apply to this dispute, or any part of it, then any such allocation under that statute must be made pursuant to the factors set forth in ORS 465.480(5).

COUNTERCLAIM

DECLARATORY JUDGMENT

28 U.S.C. § 2201 and ORS § 28.010

36.

TIG Insurance Company, formerly known as Transamerica Insurance Company, ("TIG") is a California corporation with its principal place of business in New Hampshire.

///

Page 9 – TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

37.

National Surety Corporation ("NSC") is an Illinois corporation with its principal place of business in Illinois.

38.

The amount in controversy exceeds $75,000, and complete diversity of citizenship exists. The court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.

39.

Venue is proper pursuant to 28 U.S.C. § 1391.

40.

As set forth in NSC's Complaint, NSC agreed subject to a reservation of rights to defend and indemnify McKay against the DEQ Claims under the NSC Primary Policies, as those terms are defined in NSC's Complaint.

41.

As set forth in NSC's Complaint, TIG agreed subject to a reservation of rights to defend and indemnify McKay against the DEQ Claims under the Initial TIG Policy, as those terms are defined in NSC's Complaint.

42.

As alleged in paragraph 10 of NSC's Complaint, NSC also has four additional umbrella and/or excess policies, defined as the "NSC Excess Policies."

43.

TIG also has certain umbrella and/or excess policies.

44.

TIG and NSC continue to make payments of defense and indemnity costs related to the DEQ Claims.

///

**Pa**ge 10 – TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

45.

To the extent such continued payments exhaust the limits of TIG's primary insurance policy or policies, as may be proven and applicable, then, pursuant to the terms set forth in TIG's umbrella and/or excess policies and applicable law, any further payments must be made pursuant to the NSC Primary Policies until such primary limits are exhausted, and not from TIG's umbrella and/or excess policies.

46.

On information and belief, NSC contests the order and method of payment as set forth in Paragraph 44 and, therefore, an actual controversy exists between the parties as to the order and method of payment if and when TIG's primary insurance coverage is exhausted.

47.

Therefore, pursuant to Oregon's Uniform Declaratory Judgments Act, ORS § 28.010 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, TIG is entitled to a declaration as set forth in Paragraph 45.

WHEREFORE, having fully answered Plaintiff's complaint and alleged affirmative defenses and its counterclaim, TIG prays for judgment in its favor on Plaintiff's claims and on TIG's counterclaim, for Plaintiff's claims to be dismissed with prejudice and with Plaintiff taking nothing thereby, for a declaration as set forth in Paragraph 45, and for TIG to be awarded its costs, disbursements, and any other relief the court deems just and proper.

Dated this 21st day of June, 2021.

SUSSMAN SHANK LLP

_____
Tab Wood, OSB No. 115604
Thomas Christ, OSB No. 834064
Attorneys for TIG Insurance Company

Page 11 – TIG INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM