IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL SURETY CORPORATION
*an Illinois corporation*,

    Plaintiff,

  v.

TIG INSURANCE COMPANY
*a California corporation*
*formerly known as*
TRANSAMERICA INSURANCE
COMPANY,

    Defendants.

No. 3:21-cv-00266-HZ

OPINION & ORDER

Klarice A. Benn
Abbott Law Group, P.C.
4380 S Macadam Avenue, Suite 590
Portland, OR 97239

    Attorney for Plaintiff

Thomas M. Christ
William S. T. Wood
Sussman Shank, LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff National Surety Corporation ("NSC") brings this declaratory judgment and contribution action against TIG Insurance Company, formally known as Transamerica Insurance Company ("TIG"). Plaintiff seeks a declaration that Defendant issued comprehensive general liability policies over certain years and a determination of damages owed to Plaintiff based on those years of coverage. The parties filed cross motions for summary judgment. For the reasons that follow, the Court grants in part Defendant's motion and denies in part Plaintiff's motion and reserves ruling on the remaining issues.

## BACKGROUND

McKay Investments Company ("McKay") is a "family development company." Korth Decl. ¶ 1, ECF 24. In 2009, the Oregon Department of Environmental Quality ("DEQ") made a claim against McKay for cleanup of pollution at the site of a former dry cleaner in a shopping center that McKay owned. *Id.* ¶ 3–4. DEQ demanded payment of $964,847.33 in costs that DEQ incurred investigating and remediating contamination at the site. *Id.* ¶¶ 5. DEQ also demanded that McKay complete a remedial investigation and feasibility study and perform all necessary removal and remedial actions. *Id.* McKay agreed and the remedial investigation and feasibility study are still ongoing. *Id.*

After the demand from DEQ, McKay searched for evidence of insurance policies that could provide coverage for DEQ's claims. Korth Decl. ¶ 6. On March 5, 2010, McKay tendered defense and indemnity of the DEQ Claims and lost policy notices under Or. Rev. Stat. § 465.479 to Plaintiff and Defendant. *Id.*; Korth Dec. ¶ 6 Exs. 2 and 3.

Plaintiff responded with reservation of rights letters and identified three one-year policies starting in 1985. These policies all had $500,000 limits of liability for each occurrence and in the

aggregate. Lazzaro Decl. ¶¶ 4–8; Lazzaro Decl. Exs. 4, 5 at 36–38. Defendant responded and identified one primary policy with a policy period of March 1, 1980 to March 1, 1981 and $100,000 in property damage limits for each occurrence and in the aggregate. Benn Decl. Ex. 42 ("Beecher Dep.") 15:17–16:17; Benn Decl. Ex. 6 at 3.

## I.    Initial Cost Share Agreement

Plaintiff initially proposed the insurers split the indemnity and defense costs fifty-fifty. Lazzaro Decl. Ex. 7. Defendant declined and proposed splitting the defense costs using a time-on-risk formula. In March 2011, the parties settled on an interim cost sharing agreement of 19.67% (Defendant) and 80.33% (Plaintiff). Lazzaro Decl. ¶ 10.

In February 2013, Defendant notified Plaintiff and McKay that it had discovered four additional primary policies with six additional years of coverage from March 1, 1974 to March 1, 1980. Benn Decl. Exs. 8, 9. It agreed to provide McKay a defense for the DEQ claims under these policies subject to a reservation of rights. *Id.* At that time, Defendant suggested that a reallocation of defense costs based on time-on-risk and policy limits was appropriate but no new agreement was reached. Benn Decl. Ex. 9.

## II.    Past Costs Settlement

After the additional policies were discovered, the parties attempted to resolve DEQ's demand to McKay for $964,847.33 in past costs. During these negotiations, Defendant took the position that McKay was uninsured for from 1962 to March 1, 1974, and again from March 1, 1981 to March 1, 1983. It contended McKay should bear some portion of the past costs due to DEQ because of these "uninsured" years. Beecher Dep. 45:24–48:5. The parties ultimately settled on the following allocation for past costs due to DEQ: 67.98% (Plaintiff), 18.43% (Defendant), and 13.59% (McKay). Lazzaro Decl. Ex. 16 at 5–6. Plaintiff paid McKay's 13.59%

allocation. *Id.* The parties also agreed the insurers would pay McKay $75,000 for costs that it had incurred directly. *Id.* Plaintiff paid 81.57% of the $75,000 settlement and Defendant paid 18.43%. *Id.* Plaintiff and Defendant, the insurers, included a reservation of rights clause against one another in the Past Costs Settlement Agreement. *Id.* at 7–8.

### III.    Lost Policies and Attempted Renegotiation of the Cost-Sharing Agreement

In September 2014, Plaintiff provided Defendant with secondary evidence that it believed established more years of coverage from Defendant. Lazzaro Decl. Ex. 17. In March 2015, Plaintiff received the results of an investigation by its insurance archeologist. Hatley Decl. ¶¶ 1–3. The investigation found more secondary evidence that Defendant issued primary commercial general liability policies to McKay from at least March 1, of 1971 to March 1, of 1974 and March 1, 1981 through March 1, 1983. *Id.* ¶ 7. These are the same years which Defendant had argued that McKay was "uninsured."

Based on this information, and the six additional years of coverage Defendant discovered in February 2013, Plaintiff attempted to re-negotiate the cost-sharing agreement between the parties on multiple occasions. Lazzaro Decl. Ex. 21; Benn Decl. Ex. 24; Benn Decl. ¶ 14; Benn Decl. Ex. 27. Throughout these negotiations, Defendant refused to agree to an updated cost-sharing agreement and ultimately argued it should be paying less than the parties agreed to in the initial cost-sharing agreement. Benn Decl. Ex. 28.

Plaintiff filed this action for a declaratory judgment and contribution on February 18, 2021. Compl., ECF 1.

## STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    Declaratory Judgment

The Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Declaratory Judgment Act is at the discretion of the district court. *Gov't*

*Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). Thus, "[e]ven if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002). However, "[a] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Dizol*, 133 F.3d at 1223. When determining whether to retain jurisdiction in a properly filed declaratory-judgment action, the court "must make a sufficient record of its reasoning to enable appropriate appellate review." *Id.* at 1225.

There are three main factors for the court to consider when determining whether to exercise jurisdiction over a declaratory-judgment action (the "*Brillhart*" factors" as set out in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)): (1) avoiding needless determinations of state-law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. In addition to the established *Brillhart* factors, the district court must "balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

## DISCUSSION

Plaintiff seeks a declaration that Defendant issued comprehensive general liability policies over certain years. Based on the existence of these policies, Plaintiff brings a cause of action against Defendant for contribution and asks the Court for a determination of the equitable share of each parties' financial obligations to McKay going forward. Defendant moves for summary judgment arguing the statute of limitations bars Plaintiff's claims. The Court begins by addressing Defendant's statute of limitations arguments.

//

//

## I.      Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on all claims against it arguing that the applicable statute of limitations ORS 12.080(2), bars Plaintiff's claims. Plaintiff responds that ORS 12.080(2) does not apply to its claims and that Defendant cannot prevail on the alternative common law defense of latches.

### A.      Statute of Limitations—ORS 12.080(2)

Plaintiff brought its action for statutory contribution under ORS 465.480(4). The legislature enacted the Oregon Environmental Clean Up Assistance Act ("OECCA") to promote "the fair and efficient resolution of environmental claims." ORS 465.478.  The law clarifies the rights of insurers and other parties in the context of environmental cleanup claims. ORS 465.480 creates a right to statutory contribution. It provides:

> An insurer that has paid all or part of an environmental claim may seek
> contribution from any other insurer that is liable or potentially liable to the
> insured and that has not entered into a good-faith settlement agreement with the
> insured regarding the environmental claim.

*Id.*

ORS 465.480 does not contain an express statute of limitations. Defendant contends statutory contribution claims brought under ORS 465.480(4) are subject to ORS 12.080(2)'s six-year statute of limitations.

ORS 12.080(2) is a "'catchall' statute of limitations that applies broadly to any claim alleging a 'liability created by statute' for which no other limitations period is provided." *S.V. v. Sherwood Sch. Dist.*, 254 F.3d 877, 881 (9th Cir. 2001). It reads "[a]n action upon a liability create by statute . . . shall be commenced within six years." ORS 12.080(2).

Plaintiff argues ORS 12.080(2) does not apply because ORS 465.480(4) did not create new liability but provided a statutory framework for environmental claims.

Defendant responds that ORS 12.080(2) applies because ORS 465.480(4) is "liability created by statute." Def. Reply at 2, ECF 36.

To determine whether a right is "created by statute" under ORS 12.080(2), the court asks, "whether such right so changed the liability imposed by common law as to create an entirely new and distinct liability." *Hyatt Chalet Motels, Inc. v. Salem Bldg. & Const. Trades Council*, 298 F. Supp. 699, 703 (D. Or. 1968); *see also Hoffman v. Wair*, 193 F. Supp. 727, 729–730 (D. Or. 1961) (noting that "liability created by statute" does not "include or extend to actions arising under the common law" and describing the test as "whether or not independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether, independently of the statute, the right of action exists for a breach of the duty or obligation imposed by the state" (internal quotation marks and citation omitted)).

Plaintiff argues that the liability imposed via ORS 465.480(4) is not "an entirely new and distinct liability." *Id.* In one sense, Plaintiff is correct that the liability under ORS 465.480(4) is not "new" because the equitable claim of contribution is the "fountain or source" of liability under the statute. *Hoffman*, 193 F. Supp. at 731. ORS 465.480(4) codified existing common law liability for contribution in the environmental cleanup and coverage context. *See Allianz Glob. Risks US Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 367 Or. 711, 738, 483 P.3d 1124, 1141, *opinion adhered to as modified on reconsideration*, 368 Or. 229, 489 P.3d 115 (2021) ("Equitable contribution claims by one insurer against co-insurers are not uncommon, and this court has recognized them for many years."). A critical distinction though is that the OECAA preempts common law contributions claims. *See* ORS 465.480(4)(d) ("Contribution rights by and among insurers under this

section preempt all common law contribution rights, if any, by and between insurers for environmental claims."). Thus, under the OECAA scheme there is no longer liability arising under the common law for equitable contribution claims between insurers in the environmental cleanup context. Accordingly, no independent common law right to contribution exists because it has been preempted by statute. Thus, Plaintiff's right to bring this claim, and Defendant's liability, arise under statute. The Court finds ORS 12.080(2)'s six-year statute of limitations applies to statutory contribution claims brought under ORS 465.480(4).[1]

### B.    Accrual

Finding that a six-year statute of limitations applies to Plaintiff's statutory contribution claims, the next question is when Plaintiff's claims accrued. The parties disagree over when Plaintiff's claims accrued. Defendant argues Plaintiff's claims accrued in 2010 when it began making payments. Plaintiff responds that because it did not fully discover its claims until later, the statute of limitations did not begin to run until 2015. Alternatively, Plaintiff argues that the statute of limitations does not bar its claims completely because each payment gives rise to its own cause of action.

### i.    Application of Discovery Rule to ORS 12.080(2)

The Court begins by addressing Plaintiff's argument that the discovery rule applies to its claim. Plaintiff contends that even though it began to pay on the environmental claim in 2010, it did not discover Defendant's lost policies until 2013, and

---

[1]  In *Arkema Inc. v. Anderson Roofing Co.* Judge Mosman applied ORS 12.080(2)'s six-year statute of limitation to similar statutory contribution claims arising under Oregon's Superfund Act. 719 F. Supp. 2d 1318, 1327 (D. Or. 2010). This Court's findings are consistent with *Arkema* though the same question was not before Judge Mosman. In that case, the parties agreed that ORS 12.080(2) applied and argued instead over when the claims accrued. *Id.*

was not fully aware of their impact until 2015.[2] Under Plaintiff's theory, despite the six-year statute of limitations, it would be entitled to seek contribution on all payments made. Defendant responds that ORS 465.480(4) and the applicable statute of limitations, ORS 12.080(2), do not incorporate a discovery rule.

"The discovery rule is 'a rule of interpretation of statutes of limitation that has the effect of tolling the commencement of such statutes under certain circumstances.'" *Rice v. Rabb*, 354 Or. 721, 725, 320 P.3d 554, 556 (2014) (citing *FDIC v. Smith,* 328 Or. 420, 428, 980 P.2d 141 (1999)). When the rule applies, the period of limitations commences on "(1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed." *Greene v. Legacy Emanuel Hospital,* 335 Or. 115, 123, 60 P.3d 535, 540 (2002) (emphasis in original). "The existence of a discovery rule cannot be assumed, but rather must be embodied in the applicable statute of limitations." *Rice*, 354 Or. at 726, 320 P.3d at 557 (citing *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or. 226, 230, 26 P.3d 817 (2001)).

Defendant cites *Waxman v. Waxman & Assocs., Inc.* for the proposition that ORS 12.080(2) does not incorporate a discovery rule. 224 Or. App. 499, 511, 198 P.3d 445, 453 (2008). *Waxman* concerned ORS 12.080(1), the statute of limitations for breach of contract actions. *Id.* The court found that because "it is well settled that a contract claim accrues on breach" 12.080(1) does not contain a discovery rule. *Id.* at 512. Defendant argues that because

---

[2] Plaintiff's argument has less force considering the Court's findings on the issue of when the statute of limitations runs in a contribution action related to multiple payments. *See infra*. Still, if the Court were to agree with Plaintiff that it discovered the claim in 2015, tolling the statute of limitations period, it could potentially recover contribution amounts on a greater number of payments. With this in mind, the Court addresses Plaintiff's discovery rule arguments.

Plaintiff's claims also fall under ORS subchapter 12.080 *Waxman* controls whether ORS 12.080(2) incorporates a discovery rule.

      *Waxman* and its principle provide limited value to the Court's analysis of whether a discovery rule is "embodied" in 12.080(2). First, that ORS 12.080(1) and ORS 12.080(2) appear under the same subchapter is not dispositive. Oregon courts have reached the opposite conclusion when analyzing other provisions within the same subchapter. *See infra.* Second, Plaintiff does not bring breach of contract claims. Defendant cites to no comparable principle of "well settled" law on when "an action upon a liability created by statute" accrues. Although there is case law on when a cause of action for contribution accrues under the common law, this is not so for the more general category of "a liability created by statute." ORS 12.080(2).

      To determine whether ORS 12.080(2) incorporates a discovery rule, the Court looks to the text and context of the statute and analogous cases. In *Rice v. Rabb* the Oregon Supreme Court found that the discovery rule applies to ORS 12.080(4)—the statute of limitations applicable to actions "for taking, detaining or injuring personal property." 354 Or. at 728. The court's analysis focused on the complimentary provision ORS 12.010. *Id.* ORS 12.010 applies to limitations periods found in ORS chapter 12 and provides that "[a]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute." The court found that because ORS 12.080(4) did not prescribe another statute of limitations, per ORS 12.010, "the six-year limitation begins to run when the cause of action accrues." *Id.* It relied on the court's earlier discovery rule case law set out in *Berry v. Branner*, to find that "a cause of action under ORS 12.080(4) 'accrue[s]' within the meaning of ORS 12.010, 'at the time [a] plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her

person by [a] defendant.'" *Id.* (citing *Berry v. Branner*, 245 Or. 307, 316, 421 P.2d 996, 1000 (1966)).

In *Hammond v. Hammond*, the Oregon Court of Appeals considered whether ORS 12.080(3) incorporates a discovery rule. It followed *Rice's* reasoning directly and held that "the discovery rule also applies to the limitation period in ORS 12.080(3) for claims of an injury to an interest in real property" because ORS 12.010 applied to the statute. *Hammond v. Hammond*, 296 Or. App. 321, 333, 438 P.3d 408, 416 (2019) (citing *Goodwin v. Kingsmen Plastering, Inc.*, 267 Or. App. 506, 340 P.3d 169 (2014) and *Tavtigian-Coburn v. All Star Custom Homes, LLC*, 266 Or. App. 220, 337 P.3d 925 (2014)).

Because a different limitation is not prescribed by statute, ORS 12.010 applies to ORS 12.080(2), just as it does with ORS 12.080(3) and ORS 12.080(4). Thus, as noted above, under ORS 12.010 a claim "accrues" "at the time [a] plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by [a] defendant." *Id.* (citation omitted).[3] Accordingly, Plaintiff's statutory contribution claims accrued when it knew or reasonably should have known of the elements of its claims. *Rice*, 354 Or. at 733–734.

This finding tracks with the substantive claims at issue. The statute of limitations on contribution claims does not begin to run until the plaintiff has paid more than their proportion of the debt. *Durbin v. Kuney*, 19 Or. 71, 75–76, 23 P. 661, 663 (1890). It follows that Plaintiff's claims for contribution did not accrue until it knew or reasonably should have known that it had paid more than its fair share of the debt or obligation.

---

[3] The Court follows the Oregon Supreme Court's reasoning in *Rice* because the text and the context of ORS 12.080(2) provide no guidance on whether the statute embodies a discovery rule. The Court also notes that neither party conducted a *State v. Gaines* analysis or developed arguments about how the text, context, or legislative history of the statute support applying or not applying a discovery rule to ORS 12.080(2). 346 Or. 160, 171–72, 206 P.3d 1042 (2009).

Defendant notes that a discovery rule is not found in the text of the statute. Although the statute's text is the first step in statutory analysis, the Oregon Supreme Court considered and rejected this argument in *Rice*. It noted that the court "has not limited the application of the discovery rule to statutes of limitation that have expressly contained a discovery rule" and found it non-dispositive in the case of ORS 12.080(4). *Rice*, 354 Or. at 725. The Court finds that as "an action for liability created by statute," a claim for statutory contribution under ORS 465.480(4) accrues "when the plaintiff knows or reasonably should know of the elements" of the claim. *Id.* 733–734, 561.

### ii.    Application of Discovery Rule to This Case

Finding that a discovery rule applies to Plaintiff's claims, the next question is when Plaintiff discovered its statutory contribution claims. The statute of limitations "begins to run when the plaintiff discovers, or a reasonable person should have discovered, the defendant's causal role." *Hayes Oyster Co. v. Dep't of Env't Quality*, 316 Or. App. 186, 200, 504 P.3d 15, 25 (2021) (citations omitted). "The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine*, LLP, 351 Or. 270, 278, 265 P.3d 777, 781 (2011). When a plaintiff knew or should have known about their claim "presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Id.* (citing *T.R. v. Boy Scouts of America*, 344 Or. 282, 296, 181 P.3d 758 (2008)).

Plaintiff concedes that in February 2013 Defendant notified Plaintiff that it had "discovered four additional primary policies with six additional years of coverage." Pl. Resp. at 7, ECF 31. Thus, Plaintiff had actual knowledge of its potential claims for statutory contribution

against Defendant in 2013. Still, Plaintiff contends that it did not have "full knowledge" of all relevant facts until it got the results of an investigation from its insurance archeologist in 2015.

"For statute of limitations purposes, a claim accrues when the plaintiff is aware that he or she has suffered *some* harm as a result of the defendant's alleged negligence." *Cairns v. Dole,* 195 Or. App. 742, 751–52, 99 P.3d 781, 787 (2004). Therefore, although Plaintiff may not have known the full extent of its claims until 2015, it was aware it had suffered "*some* harm" in 2013. *See id.* (finding it "immaterial that the plaintiff may not have known the full extent of the damages" in the context of legal malpractice claims).

Moreover, Plaintiff does not submit evidence to support its position that it could not have discovered these policies through reasonable diligence before 2015. Ordinarily, "whether and when a plaintiff knew or should have known" about their claim "may be decided on summary judgment as a matter of law only if the record on summary judgment presents no triable issue of fact." *Johnson v. Multnomah Cnty. Dep't of Cmty. Just.,* 344 Or. 111, 118, 178 P.3d 210, 214 (2008). Plaintiff presents no evidence that creates a triable question of fact as to whether and when it knew or should have known about the statutory contribution claims. Plaintiff concedes it had actual knowledge that Defendant had additional years of coverage in February 2013. Once Plaintiff had knowledge that another insurer was potentially liable to the insured for more years of coverage, it could have brought this contribution action. Instead, Plaintiff conducted further investigation. Plaintiff though, does not explain or provide evidence that shows that it exercised reasonable diligence in its investigation of potential contribution claims. It does not show, for example, that delaying an insurance archeologist investigation is standard practice in the environmental cleanup insurance context. Without some evidence from Plaintiff showing that it

exercised reasonable diligence in discovering these claims, there is no triable issue to put before

the jury.  The Court finds Plaintiff discovered its contribution claims in February 2013.

### iii.     Claim Accrual in the Context of Multiple Payments

Finding that Plaintiff discovered its claims in 2013 does not end the case. In the

alternative, Plaintiff argues that even if the six-year statute of limitation applies, it does not bar

all claims because each payment gives rise to its own cause of action for contribution. Defendant

contends that the limitations period started in 2010 when Plaintiff began paying McKay's DEQ-

related costs, or at the latest in February 2013, when Defendant gave Plaintiff notice of its

discovery of additional policies.

In Oregon, "statutory and common-law claims for contribution and claims for

indemnification require actual discharge of a common obligation before a cause of action

accrues." *Abney-Revard, Inc. v. Associated Materials Inc.*, No. CV 05-528-PK, 2007 WL

1467302, at *1 (D. Or. May 17, 2007); *see also Durbin*, 19 Or. at 71 ("The right of

contribution arises only when one has paid more than his proportion of the debt; and that

is the time when the statute of limitations begins to run."). This tracks with the statute at

issue here. Under ORS 465.480(4), an insurer "that has paid all or part of an

environmental claim may seek contribution from any other insurer."

Plaintiff "paid all or part of the environmental claim" beginning in 2010. Pl. Ex.

39, ECF 28. Accordingly, Defendant argues Plaintiff's cause of action for contribution

accrued when the first payments were made in 2010. But, in 2010, Plaintiff had only paid

more than its proportionate share on that single payment. In 2010, Plaintiff could not

have sought contribution for the future, speculative payments that were to come because

the necessary element of contribution (paying more than one's fair share) was not met.

*Durbin*, 19 Or. 71. In this sense, each payment triggers its own right to collect from the other responsible party because that is the point at which all the elements of a claim for contribution are satisfied.

Though no Oregon case has addressed this question, this approach finds support in analogous contexts and secondary sources. *See* Restatement (First) of Restitution § 77, cmt. b Reporters Notes (1937) (discussing when the right of indemnity arises and noting that "[w]here there are several payments, the statute runs from time of each as to amount paid each time"); Dick Bodyfelt, et al, Annie & The Octopus Common-Law Indemnity (Oregon State Bar Legal Pubs, 2018 ed.) (noting that no Oregon decision has addressed when the statute of limitations runs on an indemnification obligation to a third-party claimant that may be satisfied in installments but finding it "likely" that "each payment made would commence the indemnity statute with respect to that particular amount.").

In *Chartis Specialty Ins. Co. v. United States*, the court considered when the statute of limitations begins to run on a § 112(c) Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") claim that involved on-going payments. No. C-13-1527 EMC, 2013 WL 3803334, at *1 (N.D. Cal. July 19, 2013), *modified on reconsideration*, No. C-13-1527 EMC, 2015 WL 328523 (N.D. Cal. Jan. 26, 2015) at 1. CERCLA § 112(c) provides a cause of action for persons who have subrogation rights as a result of paying claimants for the costs of remediation efforts. *Id.* The plaintiff had been paying the costs of remediation. *Id.* The government argued the statute of limitations begins to run when the insurer becomes liable for payments and the plaintiff argued the statute begins to run either from the date the claim is fully paid, or, in the alternative, from the date of each payment made by the insurer. *Id.* at 13. Without a

clear answer from the statute, the court analyzed several cases "interpreting limitations periods in cases involving ongoing payments made in the course of long-term remediation efforts." *Id.* at 14. It found that "together they suggest that in cases involving multiple payments made over the course of long-term remediation efforts, courts often find that each payment gives rise to its own cause of action, and that the limitations period thus runs from each separate payment for that payment, rather than from either the first or last payment made." *Id.*

The court in *State Of New York v. Speonk Fuel, Inc.* took a similar approach. 307 A.D.2d 59, 61, 762 N.Y.S.2d 674, 676 (2003), *aff'd sub nom. State v. Speonk Fuel Inc.*, 3 N.Y.3d 720, 819 N.E.2d 991 (2004). It analyzed "when the cause of action for indemnification accrues and when the limitations period begins to run where" the plaintiff made payments over time for "for the cleanup of a fuel storage tank that leaked." *Id.* at 61. The court rejected arguments that the statue of limitations begins to run at the time of the first payment, or the time of the final payment. *Id.* at 62. It found that a cause of action for common law indemnity accrues "each time the [plaintiff] makes a payment for cleanup and removal costs" and that the plaintiff could thus recover only for payments made within the limitations period. *Id.* 62–63.

The Court finds Plaintiff's cause of action for contribution accrues, and the six-year statute of limitations periods runs, each time Plaintiff makes a payment. Under normal circumstances, this would mean Plaintiff is barred from seeking contribution on payments made

more than six years before the filing date, February 18, 2021.[4] Plaintiff's contribution claims,

however, are impacted by Oregon's COVID-19 legislation that tolled statute of limitations set to

expire during a governor-issued COVID-19 state of emergency. The Court turns now to that

issue.

C.    Application of House Bill 4212

Plaintiff contends the statute of limitations extends past six-years because Oregon House

Bill 4212 ("HB 4212") tolled the statute of limitations. Defendant does not respond to the

substance of Plaintiff's arguments.

In response to challenges wrought by the COVID-19 pandemic, the Oregon legislature

passed HB 4212. HB 4212 extends the time period to commence an action under ORS chapter 12

if "the expiration of the time to commence an action or give notice of a claim falls within the

time in which any declaration of a state of emergency issued by the Governor related to COVID-

19, and any extension of the declaration." HB 4212 § 7. HB 4212 became effective on June 30,

2020. H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020); *see also Bond v. Shriners Hosp. for

Child.*, No. 3:20-CV-01943-SB, 2021 WL 1343058, at *6 (D. Or. Mar. 1, 2021), *report and

recommendation adopted sub nom. Bond v. Shriners Hosps. for Child.*, No. 3:20-CV-01943-SB,

2021 WL 1341854 (D. Or. Apr. 9, 2021) (discussing the effective date of HB 4012). The

COVID-19 state of emergency has been extended several times, through at least June 30, 2022.

*See* Benn Decl. Exs. C, D, E, ECF 32. Taken together, this means that if the statute of limitations

---

[4] At oral argument, Defendant suggested that because Plaintiff failed to timely file suit once it
"discovered" the conceded policies in 2013, it was barred from recovering contribution damages
related to those years of coverage. Defendant offers no law to support its position. The statute of
limitations bars the claim itself, not the factual basis for the claim. ORS 12.010. Plaintiff may
recover any amount of damages supported by fact and law on the contribution claims that are not
timed barred.

had not expired before June 30, 2020, on a claim governed by ORS chapter 12, and if its expiration date occurs during the extended state of emergency, it receives the extension granted by HB 4212. *See Crooker v. City of Portland*, No. 3:20-CV-01961-IM, 2021 WL 3823203, at \*5 (D. Or. Aug. 26, 2021) (finding a lawsuit filed within the emergency period timely under the same theory). Here, because each payment triggers its own cause of action and statute of limitations period, some of Plaintiff's contribution claims could have been brought within the emergency period provided by HB 4212. Thus, Plaintiff benefits from HB 4212's extension of the statute of limitations. Plaintiff may seek contribution from Defendant on any payments made on or after March 8, 2014.[5]

## II.     Plaintiff's Motion for Summary Judgment

The Court now turns to Plaintiff's motion for summary judgment. Plaintiff moves for summary judgement on all claims and seeks the following relief: (1) a declaration that Defendant issued a series of comprehensive general liability insurance policies which obligated Defendant to defend McKay for the DEQ Claims; (2) based on the existence of these policies, a determination of the equitable share of each parties' obligation to pay McKay's defense and indemnity costs, which would control the amount of contribution owed and the split of future costs between the parties; and (3) a determination of the amount of prejudgment interest owed on its contribution claims.[6]

---

[5] Because the six-year statute of limitations does not bar all of Plaintiff's claims, *see supra*, it does not bar Plaintiff's claim for declaratory relief. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) ("if a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern.") (citations and internal quotation marks omitted).
[6] The specific relief requested by Plaintiff can be found in its motion for summary judgment at page 2. Pl. Mot., ECF 23.

Both parties agree that time-on-risk has some bearing on the Court's determination of the allocation of costs between them. Pl. Mot. at 16; Def. Resp. at 5. Accordingly, the Court cannot determine the equitable share of each parties' obligation until it has determined the total period of time each insurer issued general liability policies to McKay. To answer this question, the Court begins by addressing Plaintiff's motion for summary judgment on the existence of the lost policies i.e. the existence of more years of coverage on the part of Defendant.

### A.    Lost Policies

Plaintiff moves for summary judgment on the existence of several "lost policies." It seeks a declaration that Defendant issued comprehensive general liability insurance policies to McKay from March 1, 1971 to March 1, 1974, March 1, 1981 to March 1, 1982, and March 1, 1982 to March 1, 1983 each with a limit of $100,000 in primary coverage for property damage. Defendant contests the existence of the policies and contends that McKay was uninsured during these years.

### i.    March 1, 1971 to March 1, 1974

Plaintiff presents the following evidence in support of its motion that Defendant issued McKay a three-year general liability policy from March 1, 1971 to March 1, 1974.[7]

---

[7] Defendant objects to two pieces of Plaintiff's evidence as hearsay: (1) Plaintiff's Exhibit 29, a handwritten letter from Bill Fitch, McKay's insurance agent; and (2) Plaintiff's Exhibit 32, a handwritten expense ledger. Def. Resp. at 5. Plaintiff responds that these are admissible as business records under Federal Rule of Evidence (FRE) 803(6) and ancient documents under FRE 803(16). Pl. Reply at 5. The Court agrees with Plaintiff. Plaintiff has laid the foundation to establish that the business record exception applies to Exhibit 29 and the statements in ancient documents exception applies to Exhibit 32. Exhibit 32 was prepared before January 1, 1998, appears to be generally based on the personal knowledge of its author, and Plaintiff has met Rule 901's authentication requirements.

First, Plaintiff offers a three-year policy from March 1, 1974 to March 1, 1977 with $100,000 policy limits for each occurrence and in the aggregate for property damage. Benn Decl. Ex. 35 at 4, ECF 26-6. The declaration page of the policy states "REPLACING NO. R/W F6019900." Benn Dec. Ex. 31, ECF 26-5. Plaintiff argues this statement indicates that the 1974-1977 policy was not a new policy, but replaced a previously existing policy, indicating McKay had a policy with Defendant in the years directly preceding 1974.

Next, Plaintiff points to a handwritten "Expense – General Insurance" ledger found in McKay's historical records in a folder labeled 1973.  The ledger, albeit difficult to read, recorded an expense of $18,673 paid to Transamerica for "2 pd. 3 ann. Installments." Korth Decl. Ex. 32 ECF 24-2. Plaintiff's insurance archeologist states these notes "reference payment of a second annual installment of a three-year Transamerica policy." Hatley Decl. ¶ 6(a), ECF 27.

Finally, Plaintiff provides a letter found in Defendant's underwriting files dated March 11, 1975. Hatley Decl. Ex. 33, ECF 27-1. The letter states "this has been a good account and has proven to be very profitable . . . since the latest inspection in the file is 1972, and most of them go back to 1969, I am ordering re-inspections on all those locations previously done and indicated . . . " *Id.*

### ii.    March 1, 1981 to March 1, 1983

Plaintiff presents the following evidence in support of its motion that Defendant issued McKay a general liability policy from March 1, 1981 to March 1, 1983.[8] First, Plaintiff offers

---

[8] Defendant also raises the issue that Plaintiff failed to include the policy year March 1, 1982 to March 1, 1983 in its Complaint. It argues Plaintiff cannot include an unpled extra year in its claim at the summary judgment stage. Def. Resp. at 13. Plaintiff responds that this was a clerical error, and that Defendant has suffered no prejudice due to the error. According to Plaintiff, this policy year has been included in the parties' negotiations since September 2014, and all evidence related to the policy year was produced in discovery.

documents from its insurance agent's underwriting files. Plaintiff issued McKay a policy for the first time on March 1, 1983. Lazzaro Decl. Ex. 36, ECF 25-7. At the time, Bill Fitch from Fitch & Huggins, was McKay's insurance agent. In Bill Fitch's underwriting files, there was a letter from him to Plaintiff dated February 8, 1983. It states that the insurance agency had "written this account for four years in Transamerica and it is an excellent risk in all respects and Transamerica is willing to renew." Lazzaro Decl. Ex. 29, ECF 25-6. Plaintiff also points to Bill Fitch's handwritten notes from the same underwriting files. One states "[i]ts been in Transamerica for several years and he wants to move it." Lazzaro Dec. Ex. 30, ECF 25-6.

Next, Plaintiff points to a letter from Defendant to McKay dated December 13, 1982, that was found in McKay's historical records. Korth Decl. Ex. 34, ECF 24-3. In the letter, Defendant acknowledges receipt of a summons and complaint for an incident that occurred on December 17, 1981 and referred the matter to outside counsel. Korth Decl. Ex. 34. Plaintiff submits a declaration from an insurance archeologist who reviewed the letter and stated, "[b]ased on my extensive research experience, I am aware that CGL insurers will almost certainly only refer underlying premises liability claims to outside counsel for handling and defense only if they believe the underlying claim(s) as being a covered claim." Korth Decl. ¶ 6(f), ECF 24.

Based on this evidence, Plaintiff argues it is entitled to summary judgment because it has shown by a preponderance of the evidence that the lost policies exist. Defendant contends that

---

The Court declines to exclude the policy year. Plaintiff pled contribution and declaratory judgment claims based on Defendant's alleged additional years of coverage. Plaintiff is not raising a new claim but adding facts that provide the basis for its claims, a common practice after discovery in civil cases. Regardless, the parties' long history negotiating this case assures the Court that Defendant had fair notice of this specific policy year even if it was not pled. *See also Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint" a district court can construe the matter as a request to amend the pleadings").

Plaintiff is not entitled to summary judgment because whether these policies exist is a question of fact for the jury. Defendant directs the Court to its designated deponent who testified that "exhaustive search" failed to reveal policies for those years. Second Wood Decl. Ex. 4 Beecher Dep. 24:20–28:3, ECF 34.

Because Plaintiff has the burden on the question of whether the lost policies exist, its "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for" Plaintiff. Rutter Guide, *Fed. Civ. Proc. Before Trial*, National Ed. ¶ 14:124 (citing *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On the one hand, Plaintiff only has secondary evidence to support its position and finding for Plaintiff requires the Court to draw several inferences in its favor. On the other hand, Defendant offers limited evidence that begs an alternative inference and fails to explain why Plaintiff's evidence is insufficient. Still, drawing all reasonable inferences in favor of the non-moving party, a reasonable juror could find Defendant's witness and his description of the "exhaustive search" more credible than secondary evidence. This could lead a reasonable juror to conclude that the Lost Policies do not exist. It also is reasonable to infer that since exhaustive research and investigation did not locate the policies, they do not exist.   *See Anderson v. Liberty Lobby, Inc.* (1986) 477 US 242, 248 (nothing that a "dispute about a material fact is genuine . . .  if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") (internal quotation marks and citations omitted). The Court finds that whether the Lost Policies exist presents a genuine question of material fact that cannot be decided on summary judgment.  Plaintiff's motion for summary judgment on the issue of the existence of the lost policies is denied.

//

//

**B.    Remaining Issues**

There are several remaining issues the Court will not address in this Opinion & Order. Once the jury determines whether the lost policies exist, Plaintiff may renew its motion and seek a declaration on the proper method for allocating costs between the parties. The Court will also rule on whether Plaintiff is entitled to prejudgment interest and any other remaining legal issues at that time.

<b>CONCLUSION</b>

IT IS SO ORDERED.

DATED:____August 25, 2022____.

MARCO A. HERNÁNDEZ
United States District Judge