IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL SURETY CORPORATION
*an Illinois corporation*,

Plaintiff,

v.

TIG INSURANCE COMPANY
*a California corporation*
*formerly known as*
TRANSAMERICA INSURANCE COMPANY,
Defendant.

No. 3:21-cv-00266-HZ

OPINION & ORDER

Klarice A. Benn
Abbott Law Group, P.C.
4380 S Macadam Avenue, Suite 590
Portland, OR 97239

Attorney for Plaintiff

Thomas M. Christ
William S. T. Wood
Garrett Eggen
Sussman Shank, LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff National Surety Corporation ("NSC") brings this declaratory judgment and contribution action against TIG Insurance Company, formerly known as Transamerica Insurance Company ("TIG"). Plaintiff seeks a declaration that Defendant issued comprehensive general liability policies over certain years and contribution for defense and indemnity costs paid on environmental claims against a mutual insured. The parties filed cross motions for summary judgment, and the Court resolved many of the issues in those motions, reserving ruling on others. The Court here rules on the proper method for allocation of defense and indemnity costs between the parties.

**BACKGROUND**

In its previous ruling on the parties' cross motions for summary judgment, the Court held that the statute of limitations on Plaintiff's contribution claim runs each time Plaintiff makes a payment, and that Plaintiff can seek contribution on any payments made on or after March 8, 2014. Op. & Ord. 17-19, ECF 45. The Court reserved ruling on the proper method for the allocation of defense and indemnity costs between the parties. *Id.* at 24. The Court now resolves that issue.

The Court already laid out the facts of this case in detail in its previous opinion and does not repeat them in full here. *Id.* at 2-4. In brief, both Plaintiff and Defendant previously insured McKay Investments Company, which beginning in 2009 faced enforcement action by the

Oregon Department of Environmental Quality ("DEQ") related to pollution from a former dry cleaner at a property McKay owned. Korth Decl. ¶¶ 1, 3-6, ECF 24. Initially, Plaintiff identified three one-year policies with liability limits of $500,000. Lazzaro Decl. ¶¶ 4-8; Lazzaro Decl. Exs. 4, 5 at 36-38, ECF 25. Defendant identified one primary one-year policy with a liability limit of $100,000. Benn Decl. Ex. 42 ("Beecher Dep.") 15:17-16:17; Benn Decl. Ex. 6 at 3, ECF 26. In March 2011, the parties settled on an interim cost sharing agreement of 19.67% (Defendant) and 80.33% (Plaintiff). Lazzaro Decl. ¶ 10.

In February 2013, Defendant identified four more primary policies with six additional years of coverage and agreed to provide McKay a defense under the policies. Benn Decl. Exs. 8, 9. The parties did not reach a new agreement on allocation of defense costs. *Id.* Ex. 9. The parties did reach a settlement for allocation of past costs. Lazzaro Decl. Ex. 16 at 5-6.

In September 2014, Plaintiff contacted Defendant to provide secondary evidence of additional years of coverage by Defendant (the "lost policies"). Lazzaro Decl. Ex. 17. Plaintiff again attempted to renegotiate the cost-sharing agreement between the parties based on the additional years of coverage, but Defendant declined. Lazzaro Decl. Ex. 21; Benn Decl. Ex. 24; Benn Decl. ¶ 14; Benn Decl. Exs. 27-28. Defendant disputes the existence of the lost policies. Def. Resp. 8-9, ECF 33. The policies, both those that the parties agree exist and those that are disputed, are consecutive, not overlapping. Pl. Mot. 21, ECF 23; Def. Resp. 9.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Plaintiff and Defendant disagree on the proper method to allocate defense and indemnity costs between the parties. Plaintiff proposes two methods for defense costs: time on risk ("TOR"), its preferred method, and in the alternative an average of each insurer's *pro rata* TOR percentage and limits percentage. Pl. Mot. 16-21. Plaintiff proposes that this second method be used to allocate indemnity costs. *Id.* at 22. Defendant proposes that all costs be allocated based on exposure, the product of TOR multiplied by the policy limit. Def. Resp. 9. The Court

concludes that defense costs should be allocated based on time on risk. Indemnity costs must be allocated according to statute, and the Court will average each party's *pro rata* TOR and policy limits percentages.

**I. Defense Costs**

The Oregon Environmental Cleanup Assistance Act ("OECCA") governs insurance in environmental claims. Or. Rev. Stat. ("O.R.S.") § 465.480. The statute creates a right to contribution for the payment of defense and indemnity costs. O.R.S. 465.480(4). The statute also lays out a series of factors to consider in the allocation of "covered damages":

> **(5)** If a court determines that the apportionment of recoverable costs between insurers is appropriate, the court shall allocate the covered damages between the insurers before the court, based on the following factors:
> **(a)** The total period of time that each solvent insurer issued a general liability insurance policy to the insured applicable to the environmental claim;
> **(b)** The policy limits, including any exclusions to coverage, of each of the general liability insurance policies that provide coverage or payment for the environmental claim for which the insured is liable or potentially liable;
> **(c)** The policy that provides the most appropriate type of coverage for the type of environmental claim;
> **(d)** The terms of the policies that related to the equitable allocation between insurers; and
> **(e)** If the insured is an uninsured for any part of the time period included in the environmental claim, the insured shall be considered an insurer for purposes of allocation.

O.R.S. 465.480(5). The statute does not dictate how the Court is to consider the factors. The questions before the Court are: (1) whether these statutory factors govern the allocation of defense costs or only of indemnity costs, and (2) if the statute does not govern, what method should be used to allocate defense costs.

The majority of the district courts in Oregon to address this issue have concluded that the allocation of defense costs between consecutive insurers in environmental claims should be determined by time on risk. *Fireman's Fund Ins. Co. v. Ed Neimi Oil Co., Inc.*, No. CV 03-25-

MO, 2009 WL 5167938, at *2 (D. Or. Dec. 16, 2009); *Northwest Pipe Co. v. RLI Ins. Co.*, No. CV 09-CV-1126-PK, 2012 WL 2367143, at *6 (D. Or. March 19, 2012) (applying the statutory factors but giving policy limits a weight of zero); *Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2016 WL 2606989, at *13-14 (D. Or. May 6, 2016) (concluding that the statutory factors did not apply).

One district court in Oregon held that the statutory factors applied and that policy limits must also be considered when allocating defense costs. *Northwest Pipe Co. v. RLI Ins. Co.*, No. 3:09-CV-01126-PK, 2012 WL 2268413, at *5 (D. Or. June 13, 2012) (concluding that the statute did not distinguish between defense and indemnity costs in laying out the factors for the court to consider in allocating costs). In that case, Judge Brown allocated defense costs based on an average of each insurer's *pro rata* TOR and policy limits percentages. *Id.* at *6. In an unpublished decision, the Ninth Circuit held that this approach was not an abuse of discretion. *Northwest Pipe Co. v. RLI Ins. Co.*, 649 F. App'x 643, 645-46 (9th Cir. 2016).

Today the Court joins the majority position in holding that time on risk determines the allocation of defense costs between the consecutive insurers in this case. The Court agrees with Judge Acosta's analysis of the statutory language in *Century Indemnity*, 2016 WL 2606989, at *13, in which he concluded that the enumerated factors do not apply to the allocation of defense costs. The allocation factors in O.R.S. 465.480(5) apply to "covered damages." *Id.* The statute defines several terms, but "damages" is not one of them. O.R.S. 465.480(1); O.R.S. 465.200. When an Oregon statute does not define terms, Oregon courts "typically resort to dictionary definitions to discern their meaning." *State v. Corcilius*, 294 Or. App. 20, 23, 430 P.3d 169 (2018). A dictionary definition should be considered in the context of the statute to determine whether it makes sense. *Id.*

The term "damages" generally refers to "money claimed by, or ordered to be paid to, a person as compensation for loss or injury." 2016 WL 2606989, at *13 (citing Black's Law Dictionary at 445 (9th ed. 2009)).[1] This definition makes sense in the context of the statute. As Judge Acosta observed, the statute distinguishes between covered damages and defense costs. *Id.* (citing O.R.S. 465.480(7), which sets up rebuttable presumptions that certain types of costs should be classified as defense costs or indemnity costs).[2] Defense costs are not money paid as compensation for loss or injury, and thus they are not "covered damages." Based on the language of the statute, the factors at O.R.S. 465.480(5) do not apply to the allocation of defense costs.

Time on risk is the most equitable method to allocate defense costs in this case. As Magistrate Judge Papak stated in his Findings and Recommendation in *Northwest Pipe*:

> [P]olicy limits bear on the question of allocating an insured's defense costs among multiple insurers only where the insurers' policies provide at least partially concurrent coverage. It is axiomatic that coverage limits do not bear on an insurer's obligation to undertake an insured's defense. The logical consequence is that defense costs should be allocated pro rata according to policy limits only during, and for purposes of, periods of concurrent coverage by multiple insurers.

2012 WL 2367143, at *6. Here, the parties agree that Plaintiff and Defendant's periods of coverage are consecutive and do not overlap. Pl. Mot. 21; Def. Resp. 9. Policy limits are irrelevant in allocating defense costs in this case.

In adopting time on risk as the allocation method for defense costs incurred by successive insurers in an environmental claim, the Court also joins the majority of courts in other jurisdictions that have considered this issue. *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F.

---

[1] For this reason, the Court respectfully disagrees with the analysis of Judge Brown in *Northwest Pipe Co.*, 2012 WL 2268413, at *5. In the Court's view, O.R.S. 465.480(5) does contain language differentiating between defense and indemnity costs.

[2] Similarly, Oregon courts have long distinguished between the duty to defend and the duty to indemnify. *E.g.*, *W. Hills Dev. Co. v. Chartis Claims, Inc. Oregon Auto. Ins. Co.*, 360 Or. 650, 652-53, 385 P.3d 1053 (2016).

Supp. 2d 508, 518 (D.R.I. 2011). Allocation based on time on risk "serves to align insurers' defense cost expectations with the proportion of risk that they assume based on the duration of their policy." *Id.* This "more equitably limits liability for defense costs to the slice of progressive injury that providers choose to insure, which, in turn, advances the public policy goals of reducing underwriting uncertainty and lowering premiums for consumers." *Id.* at 519.

The Court considered Defendant's proposal for allocation of defense costs by exposure, the product of TOR and policy limits. Def. Resp. 9. Defendant relies on *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.*, 219 Or. 110, 129, 341 P.2d 110, *reh'g den.*, 219 Or 130 (1959). Def. Resp. 6. In that case, the Oregon Supreme Court addressed the proper allocation of a settlement amount between two insurers for an accident in which a truck crashed into a warehouse. 219 Or. at 113, 117. Plaintiff correctly asserts that *Lamb-Weston* provides no guidance here because it does not address defense costs, the two insurers simultaneously provided coverage to the insured, and the incident happened at a single identifiable point in time. *See* Pl. Reply 4, ECF 35.[3] Defendant acknowledges that these differences matter, but cites no factually relevant cases to support its proposed allocation method. Def. Resp. 6-7. Ultimately, policy limits are not relevant in allocating defense costs here.

Defense costs are to be allocated based on each party's time on risk.

**II. Indemnity Costs**

The parties agree that the factors at O.R.S. 465.480(5) apply to the allocation of indemnity costs. Pl. Mot. 22; Def. Resp. 4-5. The statute does not specify how the Court should apply the factors, and the Court found no cases analyzing this issue for the allocation of

[3] The other case Defendant cites, *Forest Industries Insurance Exchange v. Viking Insurance Co.*, 82 Or. App. 615, 728 P.2d 943 (1986), is similarly inapplicable here. *See* Def. Resp. 6; Pl. Reply 4.

indemnity costs. Each party proposes a method for applying both policy limits and time on risk, the first two factors.[4] Pl. Mot. 20-22; Def. Resp. 9. Plaintiff's proposed method averages each insurer's *pro rata* time on risk and policy limits percentages. Pl. Mot. 20-21. Defendant's proposed method multiplies the time on risk by the policy limit. Def. Resp. 9.

Plaintiff's proposed method is appropriate here. This is the method Judge Brown used to allocate defense costs in *Northwest Pipe Co.*, 2012 WL 2268413, at *6. Judge Brown's approach rested on the conclusion that the statutory provision laying out the factors did not distinguish between defense and indemnity costs. *Id.* at *5. As discussed above, the Court takes a different view on that issue. But with respect to indemnity costs, the Court finds Judge Brown's approach compelling. Using an average of each party's time on risk and policy limits percentages takes into account the fact that Defendant's time on risk was longer, but Plaintiff's policy limits were higher. *See* Def. Resp. 9 (including only undisputed policies); Pl. Mot. 21 (including disputed policies).[5] This method reflects the relative amount of risk each party assumed when insuring McKay. The cases on which Defendant relies provide no support for its method because they involve concurrent insurers and accidents that happened at a single point in time. *Supra* at 8. The Court adopts Plaintiff's approach. Indemnity costs are to be allocated based on an average of each insurer's time on risk and policy limits percentages.

---

[4] Neither party addresses the other three statutory factors. The Court's decision here does not foreclose consideration of those factors.

[5] As the Court stated in its previous Opinion and Order, the existence of the lost TIG policies is a question of fact that will not be decided on summary judgment. Op. & Ord. 23, ECF 45. The existence of those policies is not material to the analysis here. The policies whose existence is undisputed reflect a TOR of seven years for Defendant and four years and one month for Plaintiff, and cumulative policy limits of $500,000 for Defendant and $2 million for Plaintiff. Def. Resp. 9. The existence of some or all of the lost policies would not change the fact that Defendant's TOR is longer, but Plaintiff's policy limits are higher. *See* Pl. Mot. 21.

## CONCLUSION

Plaintiff's Motion for Summary Judgment [23] is GRANTED in part. Allocation of defense costs will be determined by each insurer's time on risk. Allocation of indemnity costs will be determined by the average of each insurer's time on risk percentage and policy limits percentage.

IT IS SO ORDERED.

DATED: November 2, 2022.

MARCO A. HERNÁNDEZ
United States District Judge