IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL SURETY CORPORATION,
*an Illinois corporation*,

        Plaintiff,

    v.

TIG INSURANCE COMPANY,
*a California corporation
formerly known as*
TRANSAMERICA INSURANCE
COMPANY,

        Defendant.

No. 3:21-cv-00266-HZ

OPINION & ORDER

Klarice A. Benn
Gillaspy Rhode Faddis & Benn LLC
4380 S Macadam Ave, Ste 590
Portland, OR 97239

        Attorney for Plaintiff

1 – OPINION & ORDER

Thomas M. Christ
William S. T. Wood
Garrett Eggen
Sussman Shank LLP
1000 SW Broadway, Ste 1400
Portland, OR 97205

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff National Surety Corporation ("NSC") brings this declaratory judgment and contribution action against TIG Insurance Company ("TIG"). The parties previously filed cross motions for summary judgment, and the Court resolved many of the issues in those motions. ECF 45, 54. In the present Supplemental Motion for Summary Judgment, Plaintiff seeks a declaration allocating defense and indemnity costs between the parties, equitable contribution for past defense and indemnity costs, and prejudgment interest. Pl. Supp. Mot., ECF 68. For the following reasons, the Court grants the motion.

## BACKGROUND

      Plaintiff and Defendant previously insured McKay Investments Company, which beginning in 2009 faced enforcement action by the Oregon Department of Environmental Quality ("DEQ") related to pollution from a former dry cleaner at a property McKay owned. Korth Decl. ¶¶ 1, 3-5, ECF 24. McKay contacted both Plaintiff and Defendant because it believed both had issued general commercial liability policies to McKay during the relevant period. *Id.* ¶ 6. Initially, Plaintiff identified three one-year policies with liability limits of $500,000. Lazzaro Decl. ¶¶ 6-8, Exs. 36-38, ECF 25. Defendant identified one primary one-year policy with a liability limit of $100,000. Benn Decl. Ex. 42 ("Beecher Dep.") 15:17-16:17; Benn Decl. Ex. 6 at 3, ECF 26.

2 – OPINION & ORDER

In or about March 2011, the parties settled on an interim cost sharing agreement of 19.67% (Defendant) and 80.33% (Plaintiff). Lazzaro Decl. ¶ 10; Benn Decl. Ex. 20; Beecher Dep. 23:8-17. On January 27, 2011, a claims specialist for Plaintiff emailed an employee of Defendant stating, "Per our discussion, National Surety Corporation, one of the Fireman's Fund Insurance Companies, agrees with your interim CSA proposal for site investigation costs and legal fees/costs, as follows: RiverStone (TIG) 20% FFIC (National Surety) 80%." Benn Decl. Ex. 20 at 1. Soon after, the split changed to 80.33% (Plaintiff) and 19.67% (Defendant). *Id.* at 3. And in March 2011, the allocation of 19.67% (Defendant) and 80.33% (Plaintiff) was finalized. Beecher Dep. 23:8-17. Defendant's corporate representative testified that the agreement was "based on the policies that were in play" when it was made. *Id.* at 23:23-25.

In February 2013, Defendant identified four more primary policies with six additional years of coverage and agreed to provide McKay a defense under the policies. Benn Decl. ¶¶ 6-7, Exs. 8, 9. Defendant proposed discussing a new agreement on allocation of defense costs. *Id.* Ex. 9. In September 2014, Plaintiff contacted Defendant to provide secondary evidence of additional years of coverage by Defendant (the "lost policies"). Lazzaro Decl. ¶ 12, Ex. 17.

In January 2015, Plaintiff and Defendant entered into a settlement agreement with McKay to address past costs. Lazzaro Decl. Ex. 16. The settlement agreement provided:

> The Insurers, however, do not release each other, and therefore reserve all rights against each other. Specifically, each Insurer preserves all rights, including all rights with respect to the allocation between them for defense, fees, expenses, costs and indemnity incurred on behalf of McKay for the Released Claims and the DEQ Claim.

*Id.* at 7-8. Over the next several years, between 2015 and 2019, Plaintiff sought to renegotiate the cost-sharing agreement between the parties based on the additional years of coverage, but

3 – OPINION & ORDER

Defendant declined. Lazzaro Decl. Ex. 21; Benn Decl. Ex. 24; Benn Decl. ¶¶ 14-17; Benn Decl. Exs. 27-28.

Plaintiff sued Defendant on February 18, 2021, seeking a declaratory judgment and equitable contribution. Compl., ECF 1. The parties filed cross-motions for summary judgment. Pl. Mot. Summ. J., ECF 23; Def. Mot. Summ. J., ECF 29. The Court ruled that the statute of limitations barred contributions on payments made before March 8, 2014. Op. & Ord. 19, ECF 45. The Court later ruled that defense costs are to be allocated based on each party's time on risk. Op. & Ord. 8, ECF 54. Indemnity costs are to be allocated based on an average of each party's time on risk and policy limits percentages. *Id.* at 9. Although the Court denied Plaintiff's motion for summary judgment with respect to the existence of the lost policies, the parties later stipulated that the lost policies exist. Am. Stip., ECF 64. Plaintiff now seeks a declaration of cost allocations, equitable contribution, and prejudgment interest. Pl. Supp. Mot. 2-3.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th

Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff seeks a declaration allocating defense and indemnity costs, equitable contribution for past costs it has paid, and prejudgment interest. The Court concludes that Plaintiff is entitled to the relief it seeks and therefore grants the motion.

**I.     Cost Allocations**

Plaintiff seeks a declaration that the allocation of defense costs is 74.6% to Defendant and 25.4% to Plaintiff. Pl. Supp. Mot. 2. Plaintiff seeks a declaration that the allocation of indemnity costs is 53.95% to Defendant and 46.05% to Plaintiff. *Id.* Defendant concedes that Plaintiff is entitled to this relief based on the Court's rulings. Def. Supp. Resp. 5.[1]

---

[1] Plaintiff argues that Defendant's 1971-74 policy has annualized limits, resulting in a total policy limit of $300,000 rather than $100,000. Pl. Supp. Mot. 9-11. The Court agrees with Plaintiff that the plain language of the policy, as reflected in the parties' Amended Stipulation of Facts, shows that the policy limits are annualized. *Id.* at 10 (citing Benn Supp. Decl. ¶ 4, Ex. 45 at 6) (policy form stating, "If this policy is issued for a period of three years, the limits of the company's liability shall apply separately to each consecutive annual period thereof."). Defendant does not dispute Plaintiff's position.

In support of the motion, Plaintiff provides tables showing each party's time on risk (for defense costs) and time on risk and policy limits (for indemnity costs). Pl. Supp. Mot. 7-9. Defendant does not dispute the accuracy of Plaintiff's calculations, and the Court found no error. The Court grants Plaintiff's motion with respect to the allocation of defense and indemnity costs.

**II.     Equitable Contribution**

Plaintiff seeks equitable contribution for defense and indemnity costs paid in excess of the percentages of costs allocated to Plaintiff under the Court's rulings. Pl. Supp. Mot. 8-9. Defendant asserts that Plaintiff is not entitled to equitable contribution because the cost-sharing agreement governs the parties' rights and obligations for past payments. Def. Supp. Resp. 5. According to Defendant, either party could have terminated the agreement at any time, but Plaintiff failed to do so and therefore must abide by its terms. *Id.* Defendant also disputes Plaintiff's characterization of the cost-sharing agreement as "interim." *Id.* at 6 n.5.

Defendant's position lacks merit. First, the evidence of the cost-sharing agreement shows that it was an interim agreement. One of Plaintiff's claims specialists emailed Defendant signaling acceptance of the agreement and referring to Defendant's proposed allocation as "interim." Benn Decl. Ex. 20 at 1. Defendant provides no evidence disputing that characterization other than its assertion that "the messages comprising the agreement" do not use the term "interim." Def. Supp. Resp. 6 n.5. Defendant's corporate representative testified that the agreement was "based on the policies that were in play" when it was made. Beecher Dep. 23:23-25. There is no genuine dispute as to whether the agreement was interim.

Second, the record shows that both parties reserved their right to equitable contribution. Plaintiff sent Defendant a letter in March 2010 reserving its rights. Lazzaro Decl. Ex. 4 at 4-5. The January 2015 settlement agreement provides that Plaintiff and Defendant "reserve all rights

6 – OPINION & ORDER

against each other. Specifically, each Insurer preserves all rights, including all rights with respect to the allocation between them for defense, fees, expenses, costs and indemnity incurred on behalf of McKay for the Released Claims and the DEQ Claim." *Id.* Ex. 6 at 7-8. Defendant cites no cases holding, or even suggesting, that an interim cost-sharing agreement between two insurers precludes an equitable contribution action, especially where the parties have reserved the right to pursue equitable contribution. While courts may hold parties to the terms of a settlement because of the public policy favoring settlements, an interim cost-sharing agreement is not entitled to such treatment because it is not final and definitive. *See, e.g.*, *Siltronic Corp. v. Emps. Ins. Co. of Wausau*, 176 F. Supp. 3d 1033, 1040 (D. Or. 2016) (discussing enforceability of settlement agreement in case involving multiple insurers for environmental claim); *Siltronic Corp. v. Emps. Ins. Co. of Wausau*, No. 3:11-CV-1493-ST, 2015 WL 181785, at *8 (D. Or. Jan. 14, 2015), *amended*, No. 3:11-CV-1493-ST, 2015 WL 13675133 (D. Or. Sept. 2, 2015) (holding that interim cost-sharing agreement did not "stay, terminate, or otherwise discharge" an insurer's duty to defend).

Plaintiff is entitled to equitable contribution for defense costs paid in excess of its allocated share. Under the interim cost-sharing agreement, Plaintiff has been paying 80.33% of the defense costs. Plaintiff's defense cost allocation is 25.4%. Plaintiff is entitled to contribution of 54.93% of the total defense costs paid from March 8, 2014, onward. Plaintiff attaches evidence of the amounts it has paid, with calculations by Tatevik Torossian, a Certified Public Accountant, showing the reimbursement to which Plaintiff believes it is entitled. Torossian Decl. ¶ 8, Ex. 44, ECF 69. The Court will not state the dollar amount to which Plaintiff is entitled in this Opinion, and will instead direct Plaintiff to submit a proposed judgment reflecting the most

7 – OPINION & ORDER

current numbers as of the date of this Opinion and Order. Plaintiff should provide updated calculations as necessary in support of a proposed judgment.

Plaintiff is also entitled to equitable contribution for indemnity costs paid in excess of its allocated share. Under the past costs settlement agreement, Plaintiff paid $61,177.50 out of the total sum of $75,000 due to McKay. Lazzaro Decl. Ex. 16 at 6. This constitutes 81.57% of indemnity costs. Plaintiff's indemnity cost allocation is 46.05%. Plaintiff states, and Defendant does not dispute, that Plaintiff has continued to pay 81.57% of the indemnity costs incurred by McKay. Pl. Supp. Mot. 9. Plaintiff is entitled to contribution of 35.52% of the total indemnity costs paid on or after March 8, 2014. Plaintiff submits evidence that this amount is $1 million. Torossian Decl. Ex. 44 at 1. Defendant does not dispute this amount. Again, the Court will not award Plaintiff a dollar amount in this Opinion and directs Plaintiff to submit a proposed judgment with a dollar amount.

### III.     Prejudgment Interest

Finally, Plaintiff seeks prejudgment interest. "[I]n the absence of an agreement to pay interest, interest can be recovered only in those circumstances authorized by statute." *Strawn v. Farmers Ins. Co.*, 353 Or. 210, 239, 297 P.3d 439 (2013) (internal quotations omitted). Oregon law provides that if the parties have not agreed to a rate of interest, the interest rate is nine percent per year on "[a]ll moneys after they become due." Or. Rev. Stat. ("O.R.S.") § 82.010(1)(a). Payment becomes due among competing insurers when an insurer is obligated to make payments under the applicable policy, not when contribution is demanded of that insurer. *Interstate Fire & Cas. Co., an Illinois Corp. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1240 (9th Cir. 1998), *as amended* (May 13, 1998) (citing *Hartford Fire Ins. Co. v. Aetna Ins. Co.*, 270 Or. 226, 237, 527 P.2d 406 (1974)).

To be awarded, prejudgment interest must be "readily ascertainable." *Patton v. Mut. of Enumclaw Ins. Co.*, 296 Or. App. 266, 272, 438 P.3d 441 (2019) (citing *Strawn*, 353 Or. at 239). This means that both the amount due and "the time from which interest should run" must be readily ascertainable. *Id.* "[A]n amount may be ascertained or ascertainable even if litigants disagree about whether and how to divide that amount." *Interstate Fire & Cas. Co.*, 129 F.3d at 1240 (citing *Forest Indus. Ins. Exch. v. United States Fid. & Guar. Co.*, 80 Or. App. 724, 723 P.2d 381, 386 (1986)). If litigants dispute only the allocation of costs, not the amount of costs, then it is proper to award prejudgment interest. *Id.* Furthermore, "even when the exact amount of damages is not ascertainable until issues of fact have been decided [by the jury], prejudgment interest is proper." *Patton*, 296 Or. App. at 276 (internal quotations omitted). In *Patton*, the Oregon Court of Appeals held that the amount due was readily ascertainable although it was "not pleaded or definitively established until the jury returned its verdict." *Id.*

Plaintiff is entitled to prejudgment interest at nine percent per year from the date Plaintiff made each payment for which Defendant owes contribution. Defendant does not dispute the amount of the costs or when they were paid, only the allocation of those costs. *See generally* Def. Supp. Resp. Defendant relies on the parties' cost-sharing agreement in arguing that no money was due from Defendant to Plaintiff and that any amount due was not ascertainable. *Id.* at 7-9. Defendant's reliance on the cost-sharing agreement is unavailing because that agreement was only an interim measure and did not extinguish Plaintiff's right to seek equitable contribution. And while the Court's rulings on allocation of costs may have been necessary to establish the amount due, that amount is still readily ascertainable just like the amount in *Patton*. As with equitable contribution, the Court will not award Plaintiff a dollar amount in this Opinion and directs Plaintiff to submit a proposed judgment with an updated amount.

## CONCLUSION

Plaintiff's Supplemental Motion for Summary Judgment [68] is GRANTED. The Court directs Plaintiff to submit a proposed judgment to the Court consistent with this Opinion and Order within 30 days.

IT IS SO ORDERED.

DATED: _____July 3, 2023_____.

                                              *Marco Hernandez*
                                           MARCO A. HERNÁNDEZ
                                           United States District Judge