IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL SURETY CORPORATION
*an Illinois corporation*,

    Plaintiff,

  v.

TIG INSURANCE COMPANY
*a California corporation*
*formerly known as*
TRANSAMERICA INSURANCE
COMPANY,
    Defendant.

No. 3:21-cv-00266-HZ

OPINION & ORDER

C. Robert Steringer
Harrang Long P.C.
111 S.W. Columbia Street
Suite 950
Portland, OR 97201

    Attorneys for Plaintiff

Thomas M. Christ
William S. T. Wood
Garrett Eggen
Sussman Shank, LLP
1000 S.W. Broadway, Suite 1400
Portland, OR 97205

    Attorneys for Defendant

HERNÁNDEZ, Senior Judge:

This matter is before the Court on remand from the Ninth Circuit and the parties' briefs on the issue of allocation of defense costs.

## BACKGROUND

Plaintiff National Surety Corporation ("NSC") and Defendant TIG Insurance Company ("TIG") insured McKay Investments Company, which beginning in 2009 faced enforcement action by the Oregon Department of Environmental Quality ("DEQ") related to pollution from a former dry cleaner at a property McKay owned. Korth Decl., ECF 24, ¶¶ 1, 3-6. McKay tendered defense and indemnity of the DEQ claims to Plaintiff and Defendant in March 2010. On March 14, 2010, Plaintiff identified three policies issued to McKay: (1) MXP-5220124 with a policy period of March 1, 1983 through March 1, 1986[1] and a liability limit of $500,000; (2) MXX-80067137 with a policy period of March 1, 1985 through March 1, 1986 and a liability limit of $500,000; and (3) MXX-80120505 with a policy period of March 1, 1986 through April 1, 1987 and a liability limit of $1,000,000. Lazzaro Decl. ECF 25, Ex. 5 (Reservation of Rights letter), p. 3. Defendant initially identified one policy: No. 12101609 with a policy period of March 1, 1980 through March 1, 1981 and a liability limit of $100,000. Benn Decl., ECF 26, Ex. 6 at 3. In February 2013, Defendant identified four additional policies: (1) No. 6963636 with a policy period of March 1, 1974 through March 1, 1977 and a liability limit of $100,000; (2) No. 10718329 with a policy period of March 1, 1977 through March 1, 1978 and a liability limit of $100,000; (3) No. 11325806 with a policy period of March 1, 1978 through March 1, 1979 and a

---

[1] This policy was cancelled March 1, 1985. Lazzaro Decl., Ex. 5, p. 3.

liability limit of $100,000; and No. 11536289 with a policy period of March 1, 1979, through March 1, 1980 and a liability limit of $100,000. Benn Decl. Ex. 8 at 3.

On February 18, 2021, Plaintiff filed a declaratory judgment and contribution action against Defendant. On May 13, 2022, Plaintiff filed a Motion for Summary Judgment seeking, among other things, a determination of the proper method to allocate defense and indemnity costs between the parties. On November 2, 2022, this Court issued an Opinion and Order in which it concluded the factors set out in Oregon Revised Statute § 465.480(5) do not apply to the allocation of defense costs, policy limits are irrelevant in allocating defense costs in this action, and time on risk ("TOR") is the most appropriate way to allocate defense costs here. *Nat'l Sur. Corp. v. TIG Ins. Co.*, No. 3:21-CV-00266-HZ, 2022 WL 16694733, at *3-*4 (D. Or. Nov. 2, 2022). The Ninth Circuit reversed in part finding that this Court's conclusion that "§ 465.480(5) does not apply to the apportionment of defense costs . . . was error." *Nat'l Sur. Corp. v. TIG Ins. Co.*, No. 23-35575, 2024 WL 4850828, at *1 (9th Cir. Nov. 21, 2024). The Ninth Circuit remanded the matter to this Court "to apply in the first instance the § 465.480(5) factors to the apportionment of defense costs." *Id.* "Given the considerable discretion that § 465.480(5) provides the district court in weighing the factors," the Ninth Circuit did "not direct that any specific weight must be applied to any one factor" and noted "as the district court concluded, policy limits may have little, if any, relevance to the apportionment of defense costs under § 465.480(5), given that the insurers in this case had no overlapping policies and the policy limits do not apply to defense costs." *Id.*

This Court directed the parties to file supplemental briefing on the issue of apportionment of defense costs and took the issue under advisement on April 24, 2025.

## DISCUSSION

Plaintiff and Defendant disagree on the proper method to allocate defense costs between the parties. Plaintiff asserts this Court should, once again, conclude that TOR is the appropriate method under the circumstances here. Defendant, on the other hand, asserts that the Court should conclude that defense costs should be allocated based on the average of each party's share of the aggregate TOR and aggregate policy limits.

The Oregon Environmental Cleanup Assistance Act ("OECCA") governs insurance in environmental claims. Or. Rev. Stat. ("O.R.S.") § 465.480. The statute creates a right to contribution for the payment of defense and indemnity costs. O.R.S. 465.480(4). The statute also provides that "[i]f a court determines that the apportionment of recoverable costs between insurers is appropriate," the court "shall allocate the covered damages between insurers" based on a number of factors, only two of which are at issue here:

> **(a)** The total period of time that each solvent insurer issued a general liability insurance policy to the insured applicable to the environmental claim;
>
> **(b)** The policy limits, including any exclusions to coverage, of each of the general liability insurance policies that provide coverage or payment for the environmental claim for which the insured is liable or potentially liable[.]

O.R.S. 465.480(5)(a) and (b). The § 465.480(5) factors apply to the apportionment of defense costs, but the statute does not dictate how courts are to consider the factors and this Court has "considerable discretion . . . in weighing the factors." *Nat'l Sur. Corp.,* 2024 WL 4850828, at *1.

**I.    Factor Weight**

Defendant asserts that because the Ninth Circuit remanded for this Court to apply the § 465.480(5) factors, the policy limits "must be given some weight." Def. Brief, ECF 85, at 3. The Ninth Circuit, however, expressly rejected that argument, did "not direct that any specific weight

must be applied to any one factor," and noted policy limits may have little, if any, relevance to the apportionment of defense costs." *Nat'l Sur. Corp.*, 2024 WL 4850828, at *1. This Court, therefore, may give no weight to policy limits if it concludes that is appropriate.

## II.     Allocation of Defense Costs

Notwithstanding the Ninth Circuit's statement that "policy limits may have little, if any, relevance to the apportionment of defense costs . . . given that the insurers in this case had no overlapping policies and the policy limits do not apply to defense costs," Defendant advocates for giving policy limits at least equal or more weight than TOR in allocating defense costs. Defendant relies on the Oregon Supreme Court's decision in *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110 (1959), and its progeny for its position. In that case, the Court addressed the proper allocation of a settlement amount between two insurers for an accident in which a truck crashed into a warehouse. *Id.* at 113, 117. This Court found in its November 2, 2022, Opinion and Order that *Lamb-Weston* provides no guidance here because it does not address defense costs, the two insurers in that case simultaneously provided coverage to the insured, and the incident happened at a single identifiable point in time. Defendant, however, asserts *Lamb-Weston* is dispositive despite the factual differences between that case and the present matter. These differences, however, are material.

In *Century Indemnity Company v. Liberty Mutual Insurance Company*, 815 F. Supp. 2d 508 (D.R.I. 2011), the court did a thorough review of the history of the various approaches that courts have taken to allocate defense costs in the context of long-term, progressive environmental injuries and an examination of the development of the TOR method that provides guidance for this Court's analysis. The court began its analysis with a review of the public policy considerations regarding progressive injuries noting "[u]nlike commonplace single-occurrence

injuries, such as car accidents, long-term environmental [p]rogressive injuries . . . are indivisible injuries attributable to ongoing events without a single clear cause." *Id.* at 514–15 (quotations omitted). "Progressive injuries can therefore occur over a period of time during which the liable party has coverage under several different insurers with multiple policies running concurrently and/or successively." *Id.* (citation omitted). When "this occurs, it can be both scientifically and administratively impossible to allocate to each policy the liability for injuries occurring only within its policy period." *Id.* (quotation omitted).

The court then discussed the development of and reasoning behind the TOR allocation method noting it "was specifically 'developed as a solution for the problem of toxic torts and industrial diseases, where damage - and liability - may be found to span the term of several policies of insurance.'" *Century Indem. Co.*, 815 F. Supp. 2d at 517 (quoting 15 *Couch on Insurance* § 217:9). "[U]nlike a single-occurrence injury, the protracted nature of a progressive injury lends itself to . . . proration based on the number of years of exposure." *Century Indem. Co.*, 815 F. Supp. 2d at 517. "Courts have since frequently allocated defense costs based on time on the risk, finding it equitable because it tends to limit coinsurers' responsibility for defense costs arising out of occurrences falling outside of their respective policy periods." *Id.* at 518 (citing *Towns v. N. Sec. Ins. Co.*, 184 Vt. 322, 964 A.2d 1150, 1167 (2008)(citing *Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.*, 1 F.3d 365, 371–72 (5th Cir. 1993)(reasoning that "[t]he insurer has not contracted to pay defense costs for occurrences which took place outside the policy period" and therefore applying Texas law to reject joint and several liability and instead apportion defense costs among multiple insurers on a pro rata basis); *Com. Union Ins. Co. v. Sepco Corp.*, 918 F.2d 920, 924 (11th Cir. 1990)(declining to hold insurer responsible "to provide defense for exposure unquestionably outside of its coverage" and

therefore upholding trial court's pro rata apportionment of defense costs); *USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 F. Supp. 2d 972, 1004 (C.D. Cal. 2006); *Owners Ins. Co v. Ill. Union Ins. Co.,* No. 1 CA–CV 07–0115, 2007 WL 5471953, at *1 (Ariz. App. Div. 1 Dec. 24, 2007); *Centennial Ins. Co. v. U.S. Fire Ins. Co.*, 88 Cal. App.4th 105, 113–14 (2001)). "By corresponding insurers' defense cost obligations to their policy periods, courts have found that time on the risk serves to align insurers' defense cost expectations with the proportion of risk that they assume based on the duration of their policy." *Id.* (citing *Ins. Co. of N. Am. v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1224-25 (6th Cir. 1980)("An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period."); *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 123 (Conn. 2003) ("Neither the insurers nor the insured could reasonably have expected that the insurers would be liable for losses occurring in periods outside of their respective policy coverage periods.")). "Thus, by providing insurers with a measure of future risk, time on the risk reduces underwriting uncertainty." *Id.* The court ultimately found that TOR "more equitably limits liability for defense costs to the slice of progressive injury that providers choose to insure, which, in turn, advances the public policy goals of reducing underwriting uncertainty and lowering premiums for consumers." *Id.* at 519.

The court's discussion and analysis in *Century Indemnity* clarifies why the Oregon Supreme Court's decision in *Lamb-Weston* does not resolve the unique issues raised by long-term, progressive environmental injuries in which insurers' policies are not concurrent. In *Lamb-Weston* the plaintiff was insured by both St. Paul Fire and Marine Insurance Company and

Oregon Automobile Insurance Company for the same period. As a result, there was no risk that either insurer would have to pay defense costs for time outside of their policy period.

Defendant asserts that consideration of policy limits in addition to TOR is important because in *Lamb-Weston* the Oregon Supreme Court explained that "when a loss is prorated in the ratio which the limits of the policies bear to the total coverage, the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy." 219 Or. at 137. As this Court noted, however, in *Lamb-Weston* the question of the burden of defense costs was not addressed or at issue because the insurance policies in that matter were concurrent not consecutive and the Court was not addressing allocation of defense (or indemnity costs), but rather a settlement. The TOR method addresses the proportionality of the burden of defense costs on each insurer to the risk it intended to undertake in this matter. In addition, as Plaintiff points out, to the extent that the idea that policy limits account for insurer's relative benefits to be received in issuing those policies, that idea assumes the policies and the premiums received were based on similar financial and regulatory considerations. When the policies were issued at different times, as at least three of the policies at issue here were (1983 through 1985 vs 1974 through 1980), the Court cannot make that assumption.

The Court has considered Or. Rev. Stat. § 465.480(5)(a) and (b) and for the above stated reasons declines to give any weight to the policy limits under the circumstances here and concludes that defense costs should be allocated pursuant to the TOR method.

## CONCLUSION

Allocation of defense costs will be determined by each insurer's time on risk.

IT IS SO ORDERED.

DATED: May 6, 2025.

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge